STATE OF CONNECTICUT *v.* ANTHONY PROTO
(12740)

STATE OF CONNECTICUT *v.* DOMINICK REDENTE
(12842)

PETERS, C. J., SHEA, CALLAHAN, BORDEN and FORD, Js.

Argued April 1—decision released June 2, 1987

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* assistant state's attorney, and *Alok Ahuja,* legal intern, for the appellant-appellee (state).

*David N. Rosen,* for the appellee-appellant (defendant in the first case).

*W. Paul Flynn,* with whom, on the brief, was *Howard A. Lawrence,* for the appellee (defendant in the second case).

PETERS, C. J. The principal issue in these appeals is whether certain provisions of Connecticut's campaign financing act, General Statutes §§ 9-333 through 9-348dd, are unconstitutionally vague and overbroad. The defendants, Anthony Proto and Dominick Redente, were separately charged by information with multiple counts of receiving cash contributions to promote the success of a political party in violation of General Statutes (Rev. to 1983) §§ 9-348k (9) and 9-348*l*.[1] Proto was

---

[1] General Statutes (Rev. to 1983) § 9-348k (9) provides: "ACTS PROHIBITED AS CORRUPT PRACTICES. The following persons shall be guilty of corrupt practices and shall be punished in accordance with the provisions of section 9-348*l* . . . (9) any person who offers or receives a cash contribution in excess of fifty dollars to promote the success or defeat of any political party, candidate, referendum question or any constitutional amendment or any question to be voted upon at any state election."

"[General Statutes (Rev. to 1983)] Sec. 9-348*l*. PENALTY. Any person who knowingly and wilfully violates any provision of this chapter shall be fined not more than five thousand dollars or imprisoned not more than five years or both. The secretary of the state or the town clerk shall notify the state elections enforcement commission, the chief state's attorney and the state's attorney for the judicial district wherein such person resides of any violation of said sections of which said secretary or such town clerk may have knowledge, provided, if any campaign treasurer fails to file the statements required by section 9-348h or 9-348p within the time required, he shall pay a late filing fee of fifty dollars and the secretary of the state or town clerk shall forthwith notify such campaign treasurer that, if such statement is not filed within seven days thereafter, the secretary of the state or town clerk shall notify the state elections commission, the chief state's attorney and the state's attorney for the judicial district wherein such campaign treasurer resides that said campaign treasurer is in violation of said section, the penalty for which shall be a fine of not more than one thousand dollars or imprisonment for not more than one year or both."

Each count charging the defendants with violations of the campaign financing act also charged them with violations of § 9-348*l*, the criminal penalty provision applicable to the act in its entirety.

All of the applicable statutes are quoted as they existed at the time of the defendants' prosecutions. In 1986, the legislature made major substan-

also charged with illegally acting as his own campaign treasurer, in violation of General Statutes § 9-348b (a),[2] with failing to deposit contributions in his campaign account, in violation of General Statutes § 9-348d,[3] and with failing to file itemized accountings of campaign contributions, in violation of General Statutes § 9-348h (a) (1).[4] Both defendants were also charged with

tive changes to the campaign financing act, under which many of the quoted provisions were repealed. Public Acts 1986, No. 86-99. These changes do not, however, affect our disposition of this appeal.

[2] General Statutes (Rev. to 1983) § 9-348b (a) provides: "FORMATION OF COMMITTEES. DESIGNATION AND RESPONSIBILITIES OF CAMPAIGN TREASURER AND DEPUTY CAMPAIGN TREASURER. APPOINTMENT AND RESPONSIBILITIES OF SOLICITOR. (a) Except as provided in subsections (e) and (f) of this section, each candidate for a particular public office shall form a single candidate committee for which he shall designate a campaign treasurer to be responsible for receiving contributions, receiving and reporting all contributions made or promised to each solicitor, receiving all such contributions from each such solicitor, making expenditures and filing the itemized sworn statements required under section 9-348h; and each candidate may also designate a deputy campaign treasurer to serve in the absence of the campaign treasurer. Except as provided in subsection (f) of this section, no candidate shall establish, agree to or assist in establishing, or give his consent or authorization to establishing a committee other than a single candidate committee to promote his candidacy for any public office."

[3] "[General Statutes (Rev. to 1983)] Sec. 9-348d. DEPOSIT OF CONTRIBUTIONS. ANONYMOUS CONTRIBUTIONS, DISPOSITION. (a) The campaign treasurer of each committee shall deposit contributions received by him, within seven days of such receipt, in the depository whose designation is on file in accordance with the provisions of section 9-348c.

"(b) Each anonymous contribution received in excess of fifteen dollars by a committee shall immediately be remitted by the campaign treasurer receiving such anonymous contribution to the state treasurer who shall deposit such funds in the general fund."

[4] General Statutes (Rev. to 1983) § 9-348h (a) (1) provides: "STATEMENTS AND REPORTS REQUIRED OF CAMPAIGN TREASURERS; FILING DATES AND CONTENTS; ACCOUNTING REQUIREMENTS. STATEMENTS AND REPORTS TO BE PUBLIC RECORDS. DISPOSITION OF SURPLUSES. (a) Except as provided in subsection (e) of this section, each campaign treasurer of a candidate committee or political committee, other than a political committee formed for ongoing political activities, shall file, on the second Thursday in the months of January, April, July and October, on the seventh day preceding an election and on the seventh day preceding a primary, a statement, sworn under penalty of false statement, with the proper authority in accordance with

multiple counts of larceny in the sixth degree, in violation of General Statutes §§ 53a-119 (1) and 53a-125b.[5] The defendants moved for dismissal of the counts charging violations of the campaign financing act; the defendant Proto moved to dismiss the larceny charges as well. The trial court granted with prejudice the defendants' motions with respect to the charges of violations of the campaign financing act. In a memorandum of decision on Proto's motion to dismiss, the trial court concluded that the provisions of the campaign financing act under which Proto was charged were impermissibly vague, in violation of the due process clauses of the state and federal constitutions.[6] The state appealed to this court from the judgments in both cases. We find error.

the provisions of section 9-336a. Such statement shall be complete as of seven days immediately preceding the required filing day, and shall cover a period to begin with the first day not included in the last filed statement. In the event such filing day falls on a Saturday, Sunday, or a legal holiday, such sworn statement shall be filed on the next business day thereafter. The statement shall include, but not be limited to: (1) An itemized accounting of each contribution, if any, including the full name and complete address of each contributor and the amount of the contribution."

[5] General Statutes § 53a-119 (1) provides: "LARCENY DEFINED. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to:

"(1) Embezzlement. A person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody."

"[General Statutes] Sec. 53a-125b. LARCENY IN THE SIXTH DEGREE: CLASS C MISDEMEANOR. (a) A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less."

Redente was also charged with one count of larceny in the fifth degree, in violation of General Statutes § 53a-125a, which provides: "LARCENY IN THE FIFTH DEGREE: CLASS B MISDEMEANOR. (a) A person is guilty of larceny in the fifth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds two hundred fifty dollars."

[6] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty

The charges against the defendants arose from events surrounding the defendant Proto's campaign for re-election as mayor of East Haven in the fall of 1983. According to an affidavit supporting the warrant for Proto's arrest, in the months preceding the November 4, 1983 election, Proto received from several individuals cash contributions in excess of fifty dollars, ostensibly to benefit his re-election campaign, and deposited them in a personal bank account. Neither the names of these contributors, nor their addresses and the amounts of their contributions, were submitted to the state elections commission. In an amended information filed on February 2, 1985, Proto was charged with nine counts of campaign financing act violations and three counts of larceny in the sixth degree.

The defendant Redente was East Haven's director of public works at the time of Proto's 1983 re-election campaign. According to an affidavit supporting the warrant for Redente's arrest, Redente received cash contributions in excess of fifty dollars, ostensibly to benefit the Proto re-election campaign, and deposited them with his personal funds. In an information filed on November 30, 1984, Redente was charged with four counts of illegally receiving campaign contributions, in violation of General Statutes § 9-348k (9), three counts of larceny in the sixth degree, and one count of larceny in the fifth degree.

On December 14, 1984, Proto moved to dismiss all of the charges against him. On May 6, 1985, the trial court issued a memorandum of decision granting Proto's motion to dismiss with prejudice, but only with respect

or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed."

to the counts charging him with violations of the campaign financing act. The trial court noted that under the United States Supreme Court's decision in *Buckley* v. *Valeo,* 424 U.S. 1, 14, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976), Connecticut's statutory regulation of campaign financing implicated the right to freedom of expression guaranteed by the first amendment to the United States constitution.[7] The court noted further that, under *Buckley,* there is a "critical constitutional distinction" between political contributions and political expenditures, the latter being entitled to significantly greater constitutional protection than the former. Turning to the relevant Connecticut statutes, however, the court determined that the definitions of "contribution" and "expenditure" contained in General Statutes (Rev. to 1983) § 9-335 (14) and (15)[8] were virtually

---

[7] The first amendment to the United States constitution provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

[8] General Statutes (Rev. to 1983) § 9-335 (14) provides: "(A) 'Contribution' means (i) any gift, subscription, loan, advance, payment or deposit of money or anything of value made for the purpose of influencing the nomination for election, or election, of any person or for the purpose of aiding or promoting the success or defeat of any constitutional amendment, referendum questions or any question to be voted upon at any election or on behalf of any political party; (ii) a written contract, promise or agreement to make a contribution for any such purpose; (iii) the payment by any person other than a candidate or campaign treasurer of compensation for the personal services of any other person which are rendered without charge to a committee of candidate for any such purpose; (iv) an expenditure, as defined in subdivision (15) of this section, when made by a person with the cooperation of or in consultation with any candidate, candidate committee or agent of such candidate or which is made in concert with, or at the request of or suggestion of, any candidate, candidate committee or agent of such candidate; or (v) funds received by a committee which are transferred from another committee or other source for any such purpose. (B) The term 'contribution' does not include (i) a loan of money by a national or state bank made in the ordinary course of business; (ii) any communication made by any corporation, labor organization or other membership organization or association to its members, owners, stockholders, executive or administrative personnel, and their families; (iii) nonpartisan voter registration and

indistinguishable. Although the proscriptions in the statutes under which the defendants were charged applied exclusively to the receipt and disposition of contributions, the court concluded that the lack of an ascer-

get-out-the-vote campaigns by any corporation, labor organization or other membership organization or association aimed at its members, owners, stockholders, executive or administrative personnel, and their families; (iv) services provided without compensation by individuals volunteering their time; (v) the use of real or personal property, and the cost of invitations, food and beverages, voluntarily provided by an individual to a candidate or on behalf of a state central or town committee, in rendering voluntary personal services for candidate or party-related activities on the individual's residential premises, to the extent that the cumulative value of such invitations, food and beverages provided by such individual on behalf of any single candidate for nomination or election does not exceed two hundred dollars with respect to any single election, and on behalf of all state central and town committees does not exceed four hundred dollars in any calendar year; (vi) the sale of any food or beverage for use in any candidate's campaign or for use by any state central or town committee at a charge less than the normal comparable charge, if such charge is at least equal to the cost of such food or beverage to the vendor, to the extent that the cumulative value of the discount given to or on behalf of any single candidate for nomination or election does not exceed two hundred dollars with respect to any single election, and on behalf of all state central and town committees does not exceed four hundred dollars in a calendar year; (vii) any unreimbursed payment for travel expenses made by an individual who on his own behalf volunteers his personal services to any single candidate for nomination or election to the extent the cumulative value does not exceed two hundred dollars with respect to any single election, and on behalf of all state central or town committees does not exceed four hundred dollars in a calendar year; (viii) the payment by a party committee, political committee or individual of the costs of preparation, display, mailing or other distribution incurred by such committee or individal with respect to any printed slate card, sample ballot or other printed list containing the names of three or more candidates for nomination or election; (ix) the donation of any item of personal property by an individual to a committee for a fund-raising affair, including a tag sale or auction, or the purchase by an individual of any such item at such fund-raising affair, to the extent that the cumulative value donated or purchased does not exceed thirty dollars; (x) the purchase by an individual of a single ticket to any fund-raising affair to the extent the purchase price of such ticket does not exceed fifteen dollars; (xi) the purchase of advertising space which clearly identifies the purchaser in a program for a fund-raising affair, provided that the cost of such space does not exceed one hundred dollars if the purchaser is a stock corporation or other business organization or fifty dollars for purchases by

tainable statutory distinction between a contribution and an expenditure meant that "persons of ordinary intelligence" lacked fair warning of what conduct was illegal and what was permitted. For this reason, the

any other person; (xii) the payment of money by a candidate to his candidate committee; or (xiii) the donation of goods or services by a stock corporation or other business organization to a committee for a fund-raising affair, including a tag sale or auction, to the extent that the cumulative value donated does not exceed one hundred dollars."

General Statutes § 9-335 (15) provides: "(A) 'Expenditure' means (i) any purchase, payment distribution, loan, advance, deposit or gift of money or anything of value, made for the purpose of influencing the nomination for election, or election, of any person or for the purpose of aiding or promoting the success or defeat of any constitutional amendment, referendum question or any question to be voted upon at any election, or on behalf of any political party; (ii) a written contract, promise or agreement to make an expenditure; or (iii) the transfer of funds by a committee to another committee. (B) The term 'expenditure' does not include (i) a loan of money by a state or national bank made in the ordinary course of business; (ii) any communication made by any corporation, labor organization or other membership organization or association to its members, owners, stockholders, executive or administrative personnel, and their families; (iii) nonpartisan voter registration and get-out-the-vote campaigns by any corporation, labor organization or other membership organization or association to its members, owners, stockholders, executive or administrative personnel, and their families; (iv) services provided without compensation by individuals volunteering their time; (v) any news story, commentary or editorial distributed through the facilities of any broadcasting station, newspaper, magazine or other periodical, unless such facilities are owned or controlled by any political party, committee or candidate; (vi) the use of real or personal property, and the cost of invitations, food and beverages, voluntarily provided by an individual to a candidate or on behalf of a state central or town committee, in rendering voluntary personal services for candidate or party-related activities on the individual's residential premises, to the extent that the cumulative value of such invitations, food and beverages provided by such individual on behalf of any single candidate for nomination or election does not exceed two hundred dollars with respect to any single election, and on behalf of all state central and town committees does not exceed four hundred dollars in a calendar year; or (vii) any unreimbursed payment for travel expenses made by an individual who on his own behalf volunteers his personal services to any single candidate for nomination or election to the extent that the cumulative value does not exceed two hundred dollars with respect to any single election, and on behalf of all state or town committees does not exceed four hundred dollars in a calendar year."

court held that the campaign financing act provisions[9] under which Proto was charged were impermissibly vague, in violation of the defendant's constitutional rights to due process of law.

On May 17, 1985, Redente moved to dismiss the four counts of the information charging him with violations of the campaign financing act, citing the disposition of Proto's motion to dismiss as authority. On July 12, 1985, the trial court granted Redente's motion with prejudice. Although it did not file a memorandum explaining its decision, we presume, as do the parties, that the reasons were identical to those advanced in the Proto memorandum of decision.

With the permission of the trial court, the state appealed to this court from the judgments of dismissal in both cases. Proto cross appealed, claiming, inter alia, that the trial court erred in failing to dismiss the larceny charges against him. Proto has since withdrawn his cross appeal.

The state has briefed identical claims of error on its appeals from the judgments in both cases. The state's two principal claims on appeal are that the trial court erred in: (1) striking down the applicable campaign financing act provisions for vagueness even though, as applied to the defendants, these provisions were not unconstitutionally vague; and (2) concluding that the definitions of "contribution" and "expenditure" in General Statutes § 9-335 (14) and (15) were unconstitution-

[9] The trial court's holding applied specifically to only one of the campaign financing act violations with which Proto was charged, the illegal receiving of contributions under General Stautes § 9-348k (9). The dismissal, however, applied to all of the charges under the campaign financing act. Because these charges all apply to the disposition of contributions, and because neither party moved the trial court to articulate its decision; see Practice Book § 4051 (formerly § 3082); we will consider the court's reasoning as applicable to all of the provisions of the campaign financing act under which the defendants were charged.

ally vague. The state also raises two additional claims of error, challenging what it characterizes as the trial court's "alternative" holdings in the Proto memorandum of decision: (1) that the requirement of General Statutes § 9-348*l* that violations of the campaign financing act be committed "knowingly and wilfully" was unconstitutionally vague; and (2) that the language of General Statutes § 9-348k (9) prohibiting the receiving of cash contributions "to promote the success or defeat of any political party [or] candidate" was unconstitutionally vague.[10] We conclude that the trial court erred in determining that the campaign financing act provisions under which the defendants were charged violated constitutional standards.

## I

The first and fourteenth amendments to the United States constitution protect the rights of political expression and association. *Citizens Against Rent Control* v. *Berkeley,* 454 U.S. 290, 295, 102 S. Ct. 434, 70 L. Ed. 2d 492 (1981); *Buckley* v. *Valeo,* supra, 15; see generally *NAACP* v. *Alabama,* 357 U.S. 449, 460, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958). Legislative restrictions on these rights, such as those imposed by Connecticut's campaign financing act, are permissible only "if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgement of associational freedoms." *Buckley* v. *Valeo,* supra, 25; *Federal Election Commission* v. *National Right to Work Committee,* 459 U.S. 197, 207, 103 S. Ct. 552, 74 L. Ed. 2d 364 (1982); *First National*

---

[10] The trial court characterized as "dispositive" its holding that the lack of an adequate statutory distinction between contributions and expenditures rendered the relevant statutes void for vagueness. The memorandum of decision suggests, however, that what the state terms the trial court's "alternative" holdings had some influence on the outcome of the trial court's decision. Accordingly, we will review the state's claims of error in this regard.

*Bank* v. *Bellotti,* 435 U.S. 765, 786, 98 S. Ct. 1407, 55 L. Ed. 2d 707, reh. denied, 438 U.S. 707, 98 S. Ct. 2126, 57 L. Ed. 2d 1150 (1978).

The permissible scope of statutory restrictions on campaign financing varies according to the type of financing restricted. In this respect, the United States Supreme Court has formulated a distinction between the regulation of contributions, which generally is constitutionally permissible, and the regulation of expenditures, which generally is not. *Buckley* v. *Valeo,* supra, 25–26.

*Buckley* involved a challenge to the Federal Election Campaign Act, which, as amended in 1974, created a comprehensive statutory scheme of regulation of contributions and expenditures in federal election campaigns. See Pub. L. No. 93-443, § 101 (c), 88 Stat. 1264–65 (1974). In striking down the act's limitations on expenditures, while sustaining the contribution limitations, the *Buckley* court fashioned a distinction between these two types of statutory restrictions. The court held that the regulation of expenditures imposed a greater infringement on protected political expression than the regulation of contributions. The court held that restrictions on expenditures, made by individuals and groups to further their own political views, "impose direct and substantial restraints on the quantity of political speech." *Buckley* v. *Valeo,* supra, 39. Regarding contributions, however, the court held that, "a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication. . . . [Such a limitation] permits the symbolic expression of support evidenced by a contribution but does not in any way infringe the contributor's freedom to discuss candidates and issues. While contributions may result in political expression if spent by a candidate or an association to present

views to the voters, the transformation of contributions into political debate involves speech by someone other than the contributor." Id., 20–21. The *Buckley* court concluded that, while the federal act's limitations on expenditures could not be constitutionally justified, its limitations on campaign contributions furthered important governmental interests by preventing corruption, and the appearance of corruption, in elective politics. Id., 26–29; see also *Federal Election Commission* v. *National Conservative Political Action Committee,* 470 U.S. 480, 497, 105 S. Ct. 1459, 84 L. Ed. 2d 455 (1985).

Before the United States Supreme Court decided *Buckley* v. *Valeo,* supra, Connecticut's campaign financing act, like the federal act challenged in *Buckley,* regulated campaign expenditures as well as contributions. See General Statutes (Rev. to 1975) §§ 9-348r through 9-348aa. Following the *Buckley* decision, however, the legislature dramatically revised the campaign financing act. Most significantly, the legislature repealed the statutory ceiling on expenditures and enacted a new law providing that any individual could make unlimited expenditures in connection with a political campaign. Public Acts 1976, No. 76-275, §§ 3 (c), 8 (P.A. No. 76-275).[11] P.A. No. 76-275 was entitled, "An Act Conforming Chapter 150 to the United States Supreme

---

[11] P.A. No. 76-275, as subsequently codified in General Statutes (Rev. to 1977) § 9-336f, provided: "UNLIMITED EXPENDITURES PERMITTED BY INDIVIDUALS, STOCK CORPORATIONS, BUSINESS ORGANIZATIONS AND OTHER ORGANIZATIONS TO PROMOTE SUCCESS OR DEFEAT OF BALLOT QUESTION. Any individual, stock corporation, other business organization or any other organization may make unlimited expenditures to aid or promote the success or defeat of any constitutional amendment, referendum question or any question to be voted upon at any election or may make unlimited contributions to any political issue committee, provided any such individual, stock corporation, other business organization or other organization which makes such expenditures in excess of ten cents for each person residing in the voting district in which a constitutional amendment, referendum question or question to be voted upon at any election is held, in accordance with the last federal decennial census, or one thousand dollars, whichever is less,

Court Decision Concerning Campaign Financing." This title, and the legislative history of P.A. No. 76-275, make it clear that the act was intended as a direct response to the United States Supreme Court's mandate in *Buckley*. 19 S. Proc., Pt. 3, 1976 Sess., pp. 1250–54; 19 H.R. Proc., Pt. 7, 1976 Sess., pp. 2953–54.

In 1981, the legislature repealed the then existing definitions of "contribution" and "expenditure" and substituted new definitions. Public Acts 1981, No. 81-395, § 1 (P.A. No. 81-395). The legislative history of P.A. No. 81-395 shows that the revised definitions were intended to bring Connecticut's campaign financing act into further compliance with *Buckley* by eliminating "expenditures when made by persons other than individuals" from the ambit of the definition of "contribution." 24 S. Proc., Pt. 9, 1981 Sess., p. 2835; 24 H.R. Proc., Pt. 25, 1981 Sess., p. 8421.[12] The revised definitions, as subsequently codified, are the definitions that the trial court held to be unconstitutionally vague in these cases.

## II

We now consider the state's first claim of error, that the trial court applied an incorrect legal standard in concluding that the statutes under which the defendants were charged were unconstitutionally vague. The state argues that, even if the statutes might suffer from some peripheral vagueness, they were not vague with

shall file all designations and sworn financial statements required to be filed by political issue committees and otherwise complies with any provision of this chapter which applies to political issue committees."

[12] The then existing definition of "contribution" in General Statutes (Rev. to 1977) § 9-348q provided, in subsection (a) (1), that contributions included "expenditures when made by persons other than individuals." The definition of "expenditure," however, in General Statutes (Rev. to 1977) § 9-348bb, provided that expenditures included "[c]ontributions when made by persons other than individuals." This particular definitional ambiguity was cured by the enactment of Public Acts 1981, No. 81-395, § 1.

respect to the defendants, whose conduct was "clearly proscribed." The state argues that the trial court erroneously failed to consider whether the statutes were vague *as applied* to the defendants. We disagree.

As a matter of the due process of law required by our federal and state constitutions, "a penal statute must be sufficiently definite to enable a person to know what conduct he must avoid." *State* v. *Pickering,* 180 Conn. 54, 59–60, 428 A.2d 322 (1980); *Buckley* v. *Valeo,* supra, 77; *United States* v. *Harriss,* 347 U.S. 612,. 617, 74 S. Ct. 808, 98 L. Ed. 989 (1954); *State* v. *Eason,* 192 Conn. 37, 46, 470 A.2d 688 (1984). The void for vagueness doctrine "requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.' " *Smith* v. *Goguen,* 415 U.S. 566, 572–73, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974).

Where penal statutes, such as the ones at issue in this case, implicate rights protected by the first amendment, their meaning must be capable of precise ascertainment in order to repel a vagueness challenge. *Buckley* v. *Valeo,* supra; *Smith* v. *Goguen,* supra, 573; *Winters* v. *New York,* 333 U.S. 507, 509–10, 68 S. Ct. 665, 92 L. Ed. 840 (1948). Where first amendment rights are at stake, vague laws may cause citizens to avoid constitutionally protected conduct for fear of incurring criminal prosecution. *Buckley* v. *Valeo,* supra, 41 n.48; *Baggett* v. *Bullitt,* 377 U.S. 360, 372, 84 S. Ct. 1316, 12 L. Ed. 2d 377 (1964); *NAACP* v. *Button,* 371 U.S. 415, 433, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963).

It is true, as the state claims, that in non-first amendment contexts, "the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue." *State* v. *Pickering,* supra, 57; *United States* v. *Powell,* 423 U.S. 87, 92, 96 S. Ct. 316, 46 L.

Ed. 2d 228 (1975); *United States* v. *Harriss*, supra. "Due to this 'chilling effect' which vague statutes can exert on first amendment liberties, [however,] when those freedoms are at stake, the statute's constitutionality is tested for vagueness on its face." *State* v. *Pickering*, supra, 58 n.3; *Grayned* v. *Rockford*, 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *Aptheker* v. *Secretary of State*, 378 U.S. 500, 516, 84 S. Ct. 1659, 12 L. Ed. 2d 992 (1964). In this case, then, the defendants "may challenge the validity of a statute's application to marginal situations even though [their] own conduct may clearly fall within the statute's proscriptions." *State* v. *Pickering*, supra; *Aptheker* v. *Secretary of State*, supra, 517; *NAACP* v. *Button*, supra, 432–33.[13] We hold that the trial court did not err in failing to limit its consideration to whether the applicable statutes, as applied to the defendants, were unconstitutionally vague.

---

[13] The state cites the United States Supreme Court's decision in *Federal Election Commission* v. *National Right to Work Committee*, 459 U.S. 197, 211, 103 S. Ct. 552, 74 L. Ed. 2d 364 (1982), as supporting its claim that, even in areas involving first amendment rights, claims of statutory vagueness should be adjudged as applied to the defendants' conduct. That decision, however, is not dispositive of these appeals. *Federal Election Commission* primarily concerned an overbreadth challenge to a federal election law statute, and dealt with the question of vagueness only summarily in a single paragraph at the end of the opinion. While the relevant portion of the opinion does suggest, albeit indirectly, that the court's review of the vagueness challenge considers the applicable statutes as applied to the defendant's conduct, the only citation given is *Broadrick* v. *Oklahoma*, 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973), which concerned the standard of review for overbreadth, not vagueness. The isolated, ambiguous language in *Federal Election Commission* on which the state relies hardly suggests the United States Supreme Court's intention to overrule its earlier decisions permitting parties to challenge statutes affecting first amendment rights for vagueness without regard to whether the statutes, as applied to the parties' conduct, were clear and in accord with constitutional standards.

## III

The state's second claim of error challenges the trial court's disposition of the defendants' cases on the merits. The defendants argue, and the trial court held, that the lack of a clear distinction between the definitions of "contribution" and "expenditure" in § 9-335 (14) and (15) renders the statutes under which the defendants were charged void for vagueness. We agree with the trial court that the applicable definitions are not paragons of clarity. We disagree, however, with the trial court's implicit conclusion that these definitions cannot be clarified and harmonized with constitutional standards through reasoned and principled statutory construction.

Ambiguity is, unfortunately, a common statutory ailment. A degree of vagueness is endemic in many statutes. *Rose* v. *Locke,* 423 U.S. 48, 49–50, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975); *State* v. *Pickering,* supra, 62. Clearly, this court lacks the authority to reshape public policy by construing a statute in a manner that alters its inherent meaning. See, e.g., *Blount* v. *Rizzi,* 400 U.S. 410, 419, 91 S. Ct. 423, 27 L. Ed. 2d 498 (1971); *Shuttlesworth* v. *Birmingham,* 394 U.S. 147, 153, 89 S. Ct. 935, 22 L. Ed. 2d 162 (1969). If the meaning of a statute can fairly be ascertained through judicial construction, however, it need not be stricken for vagueness. *State* v. *Pickering,* supra. "[A]uthoritative constructions sufficiently illuminating the contours of an otherwise vague prohibition" may be used to remedy the chilling effect of vague statutory language in areas affecting first amendment rights. *Dombrowski* v. *Pfister,* 380 U.S. 479, 490–91, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965); *Baggett* v. *Bullitt,* supra, 376–77 n.13; *Winters* v. *New York,* supra, 510; see also *Smith* v. *Goguen,* supra, 573; *United States* v. *Harriss,* supra, 617.

The meaning of unclear statutes affecting first amendment rights may be divined through recognized methods of statutory construction. "References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." *State* v. *Pickering,* supra, 62–63; *State* v. *Eason,* supra, 46. Another appropriate means of elucidation is to consider the commonly accepted meanings, if any, of the terms the statutes employ, which, unlike more arcane methods of construction, may be readily accessible to the lay persons whose conduct the statute may affect. See generally *Buckley* v. *Valeo,* supra, 23 n.24; *United States* v. *Harriss,* supra, 620–21; *Parcell* v. *Kansas,* 468 F. Sup. 1274, 1280 (D. Kan. 1979), aff'd, 639 F.2d 628 (10th Cir. 1980); *New Jersey State Chamber of Commerce* v. *New Jersey Election Law Enforcement Commission,* 82 N.J. 57, 76–78, 411 A.2d 168 (1980).

The United States Supreme Court's decision in *Buckley* v. *Valeo,* supra, which established a clear distinction between contributions and expenditures for purposes of federal campaign financing, is a uniquely applicable guide to construction of the statutes at issue in these appeals. We recognize that the United States Supreme Court's interpretation of the applicable federal statutes in *Buckley* does not control our construction of Connecticut's campaign financing act. See, e.g., *Golf Digest/Tennis, Inc.* v. *Dubno,* 203 Conn. 455, 462, 525 A.2d 106 (1987). In this case, however, the definitions of "contribution" and "expenditure" in the federal statutes construed in *Buckley,* are similar in significant respects to the definitions contained in § 9-335 (14) and (15) of the Connecticut General Statutes.[14] As discussed in part I of this opinion, the legis-

---

[14] The applicable federal definitions at the time of *Buckley,* contained in 2 U.S.C. § 591 (e) and (f), provided in relevant part: "(e) 'contribution'—

"(1) means a gift, subscription, loan, advance, or deposit of money or anything of value (except a loan of money by a national or State bank made

lative history of Connecticut's campaign financing act clearly shows that the General Assembly intended the definitions of "contribution" and "expenditure" in Connecticut's campaign financing act to incorporate the distinctions enumerated in *Buckley*. Since our goal is to clarify statutory ambiguities in a manner consistent with legislative intent; *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986); we may appropriately refer to *Buckley* as a guide to resolving the distinction between expenditures and contributions under Connecticut law.

in accordance with the applicable banking laws and regulations and in the ordinary course of business, which shall be considered a loan by each endorser or guarantor, in that proportion of the unpaid balance thereof that each endorser or guarantor bears to the total number of endorsers or guarantors), made for the purpose of influencing the nomination for election, or election, of any person to Federal office or for the purpose of influencing the results of a primary held for the selection of delegates to a national nominating convention of a political party or for the expression of a preference for the nomination of persons for election to the office of President of the United States;

"(2) means a contract, promise, or agreement, express or implied, whether or not legally enforceable, to make a contribution for such purposes;

"(3) means funds received by a political committee which are transferred to such committee from another political committee or other source;

"(4) means the payment, by any person other than a candidate or a political committee, of compensation for the personal services of another person which are rendered to such candidate or political committee without charge for any such purpose."

"(f) 'expenditure'—

"(1) means a purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value (except a loan of money by a national or State bank made in accordance with the applicable banking laws and regulations and in the ordinary course of business), made for the purpose of influencing the nomination for election, or election, of any person to Federal office or for the purpose of influencing the results of a primary held for the selection of delegates to a national nominating convention of a political party or for the expression of a preference for the nomination of persons for election to the office of President of the United States;

"(2) means a contract, promise, or agreement, express or implied, whether or not legally enforceable, to make any expenditure; and

"(3) means the transfer of funds by a political committee to another political committee."

Webster's Third New International Dictionary defines "expend" as "to pay out or distribute." This definition, without more, does little to clarify the meaning of the term "expenditure" as defined in § 9-335 (15). In *Buckley,* however, the United States Supreme Court made clear that, for purposes of federal campaign financing law, an "expenditure" is an outlay that *directly* furthers the spender's political speech and is made *independently* of a particular candidate or campaign organization. *Buckley* v. *Valeo,* supra, 20–21, 46 n.53, 79–80; see also *Parcell* v. *Kansas,* supra, 1280.

Webster's Third New International Dictionary defines "contribute" in the following manner: "to give a part to a common fund or store"; to "lend assistance or aid to a common purpose." In *Buckley* v. *Valeo,* supra, 24 n.24, the United States Supreme Court recognized that a political "contribution," as commonly understood, encompasses two general categories: (1) "Funds *provided to a candidate or political party or campaign committee* either directly or indirectly through an intermediary"; and (2) "dollars *given to another person or organization* that are earmarked for political purposes." (Emphasis added.) While a contribution may incidentally further the contributor's political speech, such benefit, if any, is *indirect,* and depends upon the use to which the contribution is put by the candidate or political organization.

Under *Buckley,* not all expenditures are entitled to heightened constitutional protection. Expenditures "placed in cooperation with or with the consent of a candidate, his agents, or an authorized committee of the candidate . . ." may properly be considered contributions for purposes of statutory regulation of campaign financing. Id., 47 n.53. Such expenditures, like contributions, further the spender's political speech only indirectly. The state's interest in regulating such expenditures coincides with its interest in regulating

contributions: to avoid corruption, or the appearance of corruption, in elective politics by "alleviat[ing] the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate." Id., 47; *Federal Election Commission* v. *National Conservative Political Action Committee,* supra, 497.

Under § 9-335 (14) (A) (iv), a "contribution" includes "an expenditure . . . when made by a person with the cooperation of or in consultation with any candidate, candidate committee or agent of such candidate . . . ." The trial court cited this provision as evidence that the definitions of "contribution" and "expenditure" are indistinguishable. The quoted provision, however, merely codifies the distinction, explicitly recognized in *Buckley,* between independent, or direct expenditures, and indirect expenditures made in cooperation with a candidate or his organization. An "expenditure," as defined in § 9-335 (15), is limited to the former.

As refined by *Buckley,* the definition of "contribution" under § 9-335 (14) excludes from its ambit some hypothetical scenarios that, if included, would render the restrictions on contributions under the campaign financing act unconstitutional. For example, a candidate who spends money to ensure his re-election does not make a contribution, since such spending directly furthers his own right to political speech. For the same reason, a person who purchases an advertisement to champion his own political views, independent of a candidate or political organization, does not make a contribution.

Our construction of the definitions of "contribution" and "expenditure" in Connecticut's campaign financing act incorporates the linguistic distinctions elaborated in *Buckley.* So construed, the scope of these definitions, and the statutes that incorporate them by reference, are not unconstitutionally vague. See *Parcell* v. *Kansas,*

supra, 1280–81; see generally *New Jersey State Chamber of Commerce* v. *New Jersey Election Law Enforcement Commission,* supra, 78–80; but cf. *Labor's Educational & Political Club—Independent* v. *Danforth,* 561 S.W.2d 339, 346–47 (Mo. 1977). Accordingly, we hold that the trial court erred in holding that the campaign financing act provisions under which the defendants were charged were void for vagueness for failing clearly to distinguish contributions from expenditures.

## IV

The state's remaining claims of error challenge two additional grounds advanced by the trial court in support of its conclusion that the statutes under which the defendants were charged were unconstitutionally vague.

The state first claims that the trial court erred in concluding that the requirement of § 9-348*l* that violations of the campaign financing act be committed "knowingly and wilfully" was unconstitutionally vague. We agree that this conclusion of the trial court was erroneous.

Section 9-348*l* provides that "[a]ny person who knowingly and wilfully violates any provision of [the campaign financing act] shall be" subject to criminal penalties. Under General Statutes § 53a-3 (12), "a person acts 'knowingly' with respect to conduct . . . described by a statute . . . when he is aware that his conduct is of such nature . . . ." A person acts "wilfully" when he performs an act in a manner that is "intentional, wrongful and without just cause or excuse." *Rogers* v. *Doody,* 119 Conn. 532, 534, 178 A. 51 (1935); *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 102, 491 A.2d 368 (1985); *Soucy* v. *Wysocki,* 139 Conn. 622, 628, 96 A.2d 225 (1953).

The defendants' argument that the phrase "knowingly and wilfully" is vague is based on a comparison of § 9-348*l* with § 9-348k. The preamble to the latter section provides: "The following persons *shall be guilty* of corrupt practices and shall be punished in accordance with the provisions of section 9-348*l* . . . ." (Emphasis added.) The defendants claim that this language creates uncertainty as to whether § 9-348k imposes criminal sanctions independent of § 9-348*l*, or whether, by virtue of § 9-348*l*, only knowing and wilful violations of § 9-348k generate criminal liability. This is a spurious argument. By its terms, § 9-348*l* applies to *all* of the provisions of the campaign financing act. Thus, with reference to § 9-348k, § 9-348*l* makes criminal liability contingent upon proof that the defendant "knowingly and wilfully" committed all of the elements of the charged violation.

The defendants argue that the phrase "knowingly and wilfully" is ambiguous because it is unclear whether it sets forth a subjective or objective standard to determine whether the required mental state exists for the commission of a crime. We disagree. The phrase "knowingly and wilfully" invariably denotes a specific intent, or subjective state of mind. See *Screws* v. *United States,* 325 U.S. 91, 101, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945). Accordingly, we conclude that the phrase, in its context, is not unconstitutionally vague.[15]

---

[15] The defendants also argue that General Statutes (Rev. to 1983) § 9-348k (9) is unconstitutionally vague because that statute's requirement that contributions be "to promote the success or defeat of any political party [or] candidate" overlaps with the definition of a contribution itself, which provides that a contribution must be "made for the purpose of influencing the nomination for election, or election, of any person . . . ." General Statutes (Rev. to 1983) § 9-335 (14). We fail to perceive how § 9-348k (9) is rendered vague simply because it incorporates by reference the "made for the purpose" language of § 9-335 (14). To the contrary, the restrictive definition of contribution narrows the scope of potential prosecutions under the statute. For example, assume that a defendant is charged, under § 9-348k (9) and General Statutes § 9-348*l*, with illegally receiving contri-

The state's next claim is that the trial court erred, in the court's words, in finding "merit" in the defendant Proto's claim that § 9-348k (9), which prohibits the receiving of cash contributions over fifty dollars "to promote the success or defeat of any political party [or] candidate," was unconstitutionally vague. We agree with the state.

The trial court did not elaborate on why it found vagueness in the phrase "to promote the success or defeat of any political party [or] candidate." On appeal, however, the defendants argue that it is not clear from the statute whether the *donor* or the *recipient* must intend for the contribution "to promote the success or defeat of any political party [or] candidate." This argument requires little discussion. Section 9-348k (9), in its entirety, prohibits both the offer and receipt of cash contributions that come under the purview of the statute. The quoted language imposes a scienter requirement, the application of which varies according to whether the offeror or recipient is charged under the statute. In this case, the defendants are accused of having illegally received contributions. Accordingly, their liability under § 9-348k (9) is contingent upon the state's proving that they received these contributions "to promote the success or defeat of any political party [or] candidate." Additionally, as discussed above, for the defendants to be subject to criminal sanctions for their conduct, they must be shown to have violated § 9-348k (9) "knowingly and wilfully."

## V

The trial court, in its memorandum of decision, relied solely on vagueness in determining that the campaign

butions to promote the success of a candidate. In addition to establishing the required scienter element under § 9-348k (9), and proving, under § 9-348*l*, that the violation was knowing and wilful, the state would also have to establish, as part of its proof, that the contribution was "*made* for the purpose" of influencing the candidate's nomination or election, as required by § 9-335 (14). (Emphasis added.)

financing act provisions under which the defendants were charged were unconstitutional. The court did not explicitly consider the issue of whether these provisions were also unconstitutionally overbroad, as the defendants had alleged in their motions to dismiss and supporting memoranda. On appeal, however, the defendants renew their argument that the applicable statutes are both vague and overbroad. Although the defendants have not properly briefed their overbreadth claims as alternate grounds upon which to uphold the judgment,[16] we nonetheless address the question of overbreadth for two reasons. First, if the applicable statutes do indeed suffer from overbreadth, this court is authorized to sustain the trial court's judgment on alternate grounds notwithstanding any procedural default by the parties. *Pepe* v. *New Britain,* 203 Conn. 281, 292, 524 A.2d 629 (1987); *Henderson* v. *Department of Motor Vehicles,* 202 Conn. 453, 461, 521 A.2d 1040 (1987). Second, because the doctrines of vagueness and overbreadth are so closely related that "[s]ometimes the two are functionally indistinguishable"; note, "The First Amendment Overbreadth Doctrine," 83 Harv. L. Rev. 844, 845 n.5 (1970); it is understandable that the trial court might have merged aspects of the two doctrines in reaching its conclusion that the applicable statutes were unconstitutional. See *Smith* v. *Goguen,* supra, 577 n.20; *NAACP* v. *Button,* supra, 432–33. We conclude, however, that the dispositive provisions of the campaign financing act do not suffer from overbreadth.

---

[16] Redente did not file a preliminary statement of issues setting forth alternate grounds on which the trial court's judgment could be affirmed, as required by Practice Book § 4013 (a) (1). Proto did file a preliminary statement of issues which claimed alternate grounds for affirmance, but did not specify those grounds. Furthermore, neither defendant's brief sets forth arguments clearly addressed to the issue of overbreadth; rather, the briefs merely mention the issue in topic headings and provide little further elaboration. In less compelling circumstances, such perfunctory briefing might be grounds for us to deem the overbreadth arguments abandoned. See *McGaffin* v. *Roberts,* 193 Conn. 393, 399 n.6, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985).

The essence of an overbreadth challenge is that a statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the first amendment. *Secretary of State* v. *J. H. Munson Co.,* 467 U.S. 947, 968, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984); *City Council* v. *Taxpayers for Vincent,* 466 U.S. 789, 798–801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984); *Husti* v. *Zuckerman Property Enterprises, Ltd.,* 199 Conn. 575, 587, 508 A.2d 735, appeal dismissed, 479 U.S.    , 107 S. Ct. 43, 93 L. Ed. 2d 373 (1986). Overbroad statutes, like vague ones, inhibit the exercise of constitutionally protected conduct. *Husti* v. *Zuckerman Property Enterprises, Ltd.,* supra. A party has standing to raise an overbreadth claim, however, "only if 'there [is] a realistic danger that the statute will significantly compromise recognized First Amendment protections of parties not before the Court . . . .' *Members of the City Council of Los Angeles* v. *Taxpayers for Vincent,* [supra, 801] . . . ." Id.; see also *Broadrick* v. *Oklahoma,* 413 U.S. 601, 613–15, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973).

We note at the outset that the penal sanctions of the campaign financing act contain a built-in check against their overbroad application. Section 9-348*l* makes the application of criminal sanctions for violations of the act contingent upon their commission "knowingly and wilfully." This scienter requirement narrows the scope of possible prosecutions under the campaign financing act, and reduces the possibility that constitutionally protected conduct will be inhibited. See *Screws* v. *United States,* supra, 101–103; *United States* v. *Ragen,* 314 U.S. 513, 524, 62 S. Ct. 374, 86 L. Ed. 383 (1942).

We turn now to the defendants' particularized claims of overbreadth. These claims, for the most part, are closely related to their claims of statutory vagueness, which we have considered fully in parts III and IV of

this opinion. The core of the defendants' arguments is that the relevant statutes are so vague that it is *possible* to interpret them as proscribing constitutionally protected conduct. They do not argue that the statutes *unequivocally* abrogate rights protected by the first amendment; if so, the statutes would be unconstitutional not for their vagueness, but for their clarity. Accordingly, we may appropriately apply the narrowing constructions of the relevant statutes that we adopted in part III to address the defendants' overbreadth claims. While these constructions would not save the challenged statutes if they *plainly* proscribed constitutionally protected conduct; *Erznoznik* v. *Jacksonville,* 422 U.S. 205, 213–14, 95 S. Ct. 2268, 45 L. Ed. 2d 125 (1975); *Aptheker* v. *Secretary of State,* supra, 515–16; we conclude that the statutes in question "permissibly bear a construction that renders [them] free from constitutional defects." *Aptheker* v. *Secretary of State,* supra, 515.[17]

The defendants' first claim that the definition of "contribution" in § 9-335 (14) is unconstitutionally overbroad. To the extent that the defendants' argument is based on the purported ambiguity of the definitions of "contribution" and "expenditure" in § 9-335 (14) and (15), respectively, our narrowing constructions of those terms, detailed in part III of this opinion, insulate the "contribution" definition from an overbreadth challenge. In addition, however, the defendants' claim that the portion of § 9-335 (14) which requires a contribution to be "made for the purpose of influencing the nomination for election, or election, of any person" is overbroad. As authority for this proposition, the defendants rely on *Buckley* v. *Valeo,* supra, which noted

[17] We note, furthermore, that there is no evidence that the campaign financing statutes have been administered in a manner that treads on constitutional liberties. *Shuttlesworth* v. *Birmingham,* 394 U.S. 147, 156, 89 S. Ct. 935, 22 L. Ed. 2d 162 (1969).

that a similar phrase in the Federal Election Campaign Act has "the same potential for encompassing both issue discussion and advocacy of a political result." Id., 79.[18] The *Buckley* court, however, construed the phrase narrowly: "To insure that the reach of [the federal statute] is not impermissibly broad, we construe [the statute] . . . to reach only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate." Id., 80. The defendants advance no convincing reasons why this court, like the court in *Buckley,* cannot invoke a similar narrowing construction of the relevant language in § 9-335 (14). Under such a construction, which we now adopt, the definition of "contribution" is not unconstitutionally overbroad.

The defendants' next claim is that § 9-348k (9), which proscribes certain cash contributions "to promote the success or defeat of any political party [or] candidate," is unconstitutionally overbroad. The defendants do not elaborate their grounds for making this claim.[19] To the extent, however, that the quoted language could be interpreted as encompassing within its proscription political advocacy protected by the first amendment, a narrowing construction is again appropriate. Accordingly, we construe the quoted language to encompass contributions which otherwise fall within the ambit of § 9-348k (9) only if such contributions are made for the direct, specific, and intentional purpose of aiding a clearly identified political party or candidate. See

---

[18] The phrase considered by the *Buckley* court, "for the purpose of . . . influencing the nomination for election, or election, of any person . . ." was part of the definition of "contribution" in 2 U.S.C § 431 (A). That definition, applicable to the then existing federal laws governing disclosure of campaign funds, was virtually identical to the definition of "contribution" applicable to the federal laws setting limits on campaign contributions and expenditures. The latter definition is set forth in full at footnote 14, supra.

[19] The defendants' principal challenges to General Statutes § 9-348k (9) are on the ground of vagueness. We have addressed these claims fully in part III of this opinion.

*Buckley* v. *Valeo,* supra, 80; *New Jersey State Chamber of Commerce* v. *New Jersey Election Law Enforcement Commission,* supra, 79. So construed, the quoted language renders § 9-348k (9) narrowly tailored to the compelling state interest of preventing political corruption, and is not unconstitutionally overbroad. See *Federal Election Commission* v. *National Conservative Political Action Committee,* supra, 497; *Buckley* v. *Valeo,* supra, 26–29.[20]

There is error, the judgments are set aside and the cases are remanded with direction for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

---

[20] The defendant Proto also argues that the provisions of the campaign financing act with which he was charged in addition to General Statutes § 9-348k (9), namely General Statutes §§ 9-348b, 9-348d, and 9-348h, are unconstitutionally vague and overbroad. His vagueness argument is fully disposed of by our construction of the definitions of "contribution" and "expenditure" in part III of this opinion. Regarding overbreadth, we deem the applicable statutes, set forth in footnotes 2 through 4 of this opinion, to be sufficiently specific to prevent the possibility of their unconstitutional application.