STATE OF CONNECTICUT *v.* SUSAN DEFRANCESCO
(12700)

DUPONT, C. J., HEIMAN and SCHALLER, Js.

Argued April 5—decision released June 1, 1994

*Norton P. Feinstein,* with whom was *Joseph Cicala,* certified legal intern, for the appellant (defendant).

*Jack W. Fischer,* assistant state's attorney, with whom, on the brief, were *Mary M. Galvin,* state's attorney, and *Gerard Esposito,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a trial to the court, of three counts of possession of a potentially dangerous animal in violation of General Statutes § 26-40a.[1] On

---

[1] General Statutes § 26-40a provides: "For the purposes of this section, the following shall be considered as potentially dangerous animals: The felidae, including the lion, leopard, cheetah, jaguar, ocelot, jaguarundi cat, puma, lynx and bobcat; the canidae, including the wolf and coyote; and the

appeal, the defendant asserts that the trial court improperly rendered the judgment of conviction because (1) the defendant is exempt from the prohibition of possession as set forth in General Statutes § 26-40a, and (2) the possession of a bengal cat, jungle cat and hybrid bobcat is not specifically prohibited by General Statutes § 26-40a, and, in the alternative, General Statutes § 26-40a is void for vagueness. We reverse in part.

The following facts are necessary for a proper resolution of this appeal. On January 27, 1992, Jan Puzas, an employee of the United States Department of Agriculture, regulatory enforcement animal care division (USDA), went to 15 Bryson Avenue in Seymour to perform a prelicensing inspection in response to the defendant's application for an exhibitor's license for one rabbit. Puzas observed that the defendant kept one jungle cat, one bengal cat and one bobcat surrounded by a stockade fence at the back of her yard. Puzas played with the animals and took pictures of them. She later gave the pictures to Sergeant Rick Lewis and Detective Jim Williams, officers of the Connecticut department of environmental protection (DEP). On March 10, 1992, the defendant received a class three license for the rabbit from the USDA under the Animal Welfare Act. 7 U.S.C. § 2133 (1993); 9 C.F.R. §§ 2.1 through 2.11 (1993). The defendant has never been found to be exempt from General Statutes § 26-40a by the DEP.

ursidae, including the black bear, grizzly bear and brown bear. No person shall possess a potentially dangerous animal. Any such animal illegally possessed may be ordered seized and may be disposed of as determined by the commissioner of environmental protection. Any person who violates any provision of this section shall be fined not more than one hundred dollars for each offense. The provisions of this section shall not apply to municipal parks, zoos and nature centers, or museums, laboratories and research facilities maintained by scientific or educational institutions or to persons possessing animals legally on or before May 23, 1983."

On February 16, 1992, the DEP, under the authority of a warrant secured after the defendant attempted to sell the three cats, removed the animals from the defendant's premises and placed them in the care of Elaine Burk, an expert in the field of felidae[2] and the head of Future Promise, a facility where rescued wild animals are cared for. The DEP also issued a misdemeanor complaint to the defendant charging her with a violation of General Statutes § 26-40a. Burk testified that these animals have a genetic propensity to be potentially dangerous. Burk further testified that bobcats weigh from twenty to forty-five pounds and hunt deer in Massachusetts during the winter;[3] jungle cats weigh from fifteen to thirty pounds and a bengal cat is a cross between an Asian leopard cat and a domestic cat. Burk also testified as to the behavior of each of these animals while in her care. The bobcat bit both her and her husband and used her hind claws to cause lacerations. The jungle cat uses her claws routinely and caused a two and one-half inch bruise on Burk's thigh. The bengal fought with the bobcat and, when Burk tried to separate the animals, the bengal attacked Burk, causing a laceration completely around her wrist and perforating her forearm four times.[4]

The trial court found that the defendant possessed potentially dangerous animals in violation of General Statutes § 26-40a. Specifically, the trial court found that the state proved beyond a reasonable doubt that (1) the defendant possessed a bobcat, a jungle cat and a bengal cat, (2) the defendant did not qualify for an exemption from General Statutes § 26-40a, (3) the list

[2] Burk testified that felidae is the family of the felines that includes all members of the cat family.

[3] Burk testified that, in her opinion, this bobcat is a full-blooded bobcat. The defendant contends that the bobcat is a hybrid, a cross between a bobcat and a domestic cat.

[4] The defendant introduced evidence rebutting the state's evidence of the potentially dangerous tendencies of the animals.

in General Statutes § 26-40a is nonexclusive and serves only as an example of dangerous felidae, (4) the bobcat, whether hybrid or not, is specifically included on the list, (5) the jungle cat and the bengal cat are included on the list as they are of a type similar to those set forth in the list, (6) General Statutes § 26-40a is not void for vagueness, and (7) the license for the rabbit given under the Animal Welfare Act to the defendant by the USDA does not preempt General Statutes § 26-40a. Thus, the trial court found the defendant guilty on all three counts and fined her $25.00 on each count. This appeal followed.

I

We must first consider the merits of the defendant's nonconstitutional claim that the trial court acted improperly in rendering judgment against the defendant. See *Perry* v. *Perry,* 222 Conn. 799, 805, 611 A.2d 400 (1992). Therefore, we must consider the defendant's claim that she is exempt from the prohibition enunciated in General Statutes § 26-40a. The defendant asserts that she was exempt from the statute because she was operating a zoo and because she legally possessed other potentially dangerous animals prior to May 23, 1983.

The defendant argues that the definition of "zoo" should be "any park, building, cage, enclosure, or other structure or premise in which a live animal or animals are kept for public exhibition or viewing, regardless of compensation." See 9 C.F.R. § 1.1 (1993). The dictionary definition of "zoo" is "a collection of living animals usually for display." Webster's Third New International Dictionary. The one element common to both definitions is that the animals are kept for public exhibition. The trial court found that "there was no indication that the defendant's use or care or possession of these animals remotely resembled that particular use."

We review this finding of fact to determine whether the trial court's determination was clearly erroneous. *State v. Zarick*, 227 Conn. 207, 228, 630 A.2d 565, cert. denied, U.S. , 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993); *State v. Pierog*, 33 Conn. App. 107, 114–15, 634 A.2d 301 (1993), cert. denied, 228 Conn. 920, 636 A.2d 851 (1994). The evidence included the fact that the defendant attempted to sell and breed the animals and that she attempted to procure an exhibitor's license from the USDA for her rabbit but not for her cats. Further, the defendant failed to provide any evidence that she possessed the cats for public exhibition. On the basis of all the evidence, the finding of fact that the defendant did not possess the cats for public exhibition is not clearly erroneous. Thus, the trial court did not improperly conclude that the defendant was not operating a zoo.

The defendant also claims that she is exempt from the statute because she legally possessed other animals prior to May 23, 1983. The only evidence as to this matter was the defendant's testimony, which the trial court did not believe. *State v. Robinson*, 213 Conn. 243, 256–57, 567 A.2d 1173 (1989). The defendant had the burden to prove that she was exempted. *State v. Tinsley*, 181 Conn. 388, 403, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981); *State v. Anonymous*, 179 .Conn. 516, 521, 427 A.2d 403 (1980).[5] She did not meet this burden.

## II

The defendant next claims that the trial court improperly rendered the judgment of conviction against her

---

[5] The defendant has the burden to prove by a preponderance of the evidence exceptions to the statute. The ownership of other such animals is not a descriptive negative defining the corpus delicti but is an exception, and does not form any essential element of the crime charged. *State v. Tinsley*, supra, 181 Conn. 403; *State v. Anonymous*, supra, 179 Conn. 521.

because the animals are not specifically listed in the statute or, in the alternative, the statute is unconstitutionally vague as applied in this case.

A careful reading of the statute provides a number of possible interpretations. First, the statute can be interpreted to consider all felidae potentially dangerous and the list of species of felidae in the statute provides examples of the type of felidae considered potentially dangerous. Second, the statute can be interpreted to prohibit the possession of only the species specifically listed. Third, the statute can be interpreted to prohibit the possession of those felidae found on the list and all other felidae found by the trial court to be potentially dangerous. Contra *Pinto* v. *Dept. of Environmental Protection,* United States District Court, District of Connecticut, Docket No. B-87-523 (March 24, 1988).

In all cases, the statute clearly prohibits the possession of a purebred bobcat. The defendant argues that her bobcat is not included in the statute because the animal is a hybrid bobcat.[6] The statute is ambiguous as to whether the term "bobcat" includes hybrid bobcats. "When the language of the statute is plain and unambiguous, we need to look no further than the words themselves because we assume that the language expresses the legislature's intent. . . . If, however, the language is unclear, we must ascertain the intent of the legislature by examining the language of the statute, its legislative history and the purpose the statute is to serve." *State* v. *White,* 204 Conn. 410, 421–22, 528 A.2d 811 (1987); *Beizer* v. *Goepfert,* 28 Conn. App.

---

[6] A hybrid bobcat is the offspring of a bobcat and a domestic cat. The trial court did not specifically find that the bobcat was a hybrid bobcat or a purebred bobcat. Instead, it determined that this fact was irrelevant to the outcome of the case. Since there is no doubt that a purebred bobcat is prohibited by the statute, we will analyze the statute on the basis that the bobcat in this case is a hybrid bobcat.

693, 698, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992), cert. denied,    U.S.    , 113 S. Ct. 1416, 122 L. Ed. 2d 786 (1993). Neither our case law nor the legislative history of this statute addresses the intended meaning of the list. See 26 H.R. Proc., Pt. 9, 1983 Sess., pp. 3481–86; 26 S. Proc., Pt. 5, 1983 Sess., pp. 1508–11; 12 H.R. Proc., Pt. 6, 1967 Sess., pp. 2552–53; 12 S. Proc., Pt. 3, 1967 Sess., p. 1512. When we interpret statutes, however, we accord great deference to the construction given to a statute by the agency charged with its enforcement. *Crochiere* v. *Board of Education,* 227 Conn. 333, 354, 630 A.2d 1027 (1993); *Police Dept.* v. *State Board of Labor Relations,* 225 Conn. 297, 300, 602 A.2d 1005 (1993); *Borent* v. *State,* 33 Conn. App. 495, 499, 636 A.2d 392 (1994). The DEP's regulations created for the enforcement of General Statutes § 26-55 has determined that an animal that results from the crossbreeding of any species listed in General Statutes § 26-40a shall be considered the wild animal of that species. Thus, the DEP considers the crossbreed of a bobcat and a domestic cat to be a bobcat. Regs., Conn. State Agencies § 26-55-2. We see no reason to depart from that interpretation by the DEP. Thus, we conclude that the possession of a hybrid bobcat is prohibited by the statute.

Further, the statute is not unconstitutionally vague as applied to the hybrid bobcat. "A claim of unconstitutional vagueness normally 'implicates the fundamental due process right to fair warning and the record is adequate to facilitate review.' *State* v. *Schriver,* 207 Conn. 456, 459, 542 A.2d 686 (1988). 'The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. *Smith* v. *Goguen,* 415 U.S. 566, 572–73, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); *Mitchell*

v. *King,* 169 Conn. 140, 142–43, 363 A.2d 68 (1975).'
*State* v. *Shriver,* supra, 459–60. 'In order to surmount
a vagueness challenge, "a statute [must] afford a per-
son of ordinary intelligence a reasonable opportunity
to know what is permitted or prohibited." *McKinney*
v. *Coventry,* 176 Conn. 613, 618, 410 A.2d 453 (1979).
The constitutional requirement of definiteness applies
more strictly to penal laws than to statutes that exact
civil penalties. *Winters* v. *New York,* 333 U.S. 507, 515,
68 S. Ct. 665, 92 L. Ed. 840 (1948).' *State* v. *Schriver,*
supra, 460." *State* v. *Battista,* 31 Conn. App. 497, 504,
626 A.2d 769, cert. denied, 227 Conn. 907, 632 A.2d
696 (1993).

" 'As a general rule, the constitutionality of a statu-
tory provision being attacked as void for vagueness is
determined by the statute's applicability to the partic-
ular facts at issue. . . . To do otherwise, absent the
appearance that the statute in question intrudes on fun-
damental constitutional guarantees, particularly first
amendment freedoms, would be to put courts in the
undesirable position of considering every conceivable
situation which might possibly arise in the application
of complex legislation.' (Citations omitted.) *State* v.
*Pickering,* 180 Conn. 54, 57, 428 A.2d 322 (1980)."
*State* v. *Battista,* supra, 31 Conn. App. 505.

As applied to the possession of a hybrid bobcat, the
statute gives the defendant fair warning that the stat-
ute prohibits such possession. Because the statute
specifically prohibits bobcats, a person of ordinary intel-
ligence has a reasonable opportunity to know that the
possession of a hybrid bobcat is prohibited. The stat-
ute also provides a standard for law enforcement.
Because the statute states that bobcats are, as a mat-
ter of law, potentially dangerous, law enforcement offi-
cers know that they must determine that the animal
is a bobcat before a possessor of an animal can be deter-

mined to have violated the statute. Thus, the statute is not unconstitutionally vague as applied to the hybrid bobcat.

The statute does not specifically state that the jungle cat and the bengal cat are potentially dangerous animals as a matter of law. Our courts have determined that the word "include" may be considered a word of limitation as well as a word of enlargement. *Mahoney* v. *Lensink,* 213 Conn. 548, 569, 569 A.2d 518 (1990); *State* v. *White,* supra, 204 Conn. 422–23; see also *Maciejewski* v. *West Hartford,* 194 Conn. 139, 147, 480 A.2d 519 (1984); *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 150, 285 A.2d 352 (1971). As in *White,* we cannot conclude whether the word "including" is used as a word of limitation or a word of enlargement.

When we find the legislative intent unclear from the language of the statute, we must look to the legislative history to determine the legislative intent. *State* v. *White,* supra, 204 Conn. 421–22; *Beizer* v. *Goepfert,* supra, 28 Conn. App. 698. The legislative history indicates that the statute was passed to control the possession of wild animals. The legislative history also indicates that the statute was intended to control, at the very least, the animals specifically listed. The legislative history fails, however, to provide guidance as to whether the statutory prohibition applies to the listed felidae only, to the listed felidae and all other potentially dangerous felidae species, or to the listed felidae and all other potentially dangerous felidae regardless of species.

On the basis of the language in the statute and the silence of the legislative history, the possessors of jungle cats and bengal cats have no warning as to whether their possession of such cats is violative of the statute. These possessors have no guidance as to whether the prohibition exists as to the specific animal's behavior,

or to the animal's species. Further, a possessor cannot know whether the statute prohibits the possession of an animal that does not belong to a species listed in the statute. See *State* v. *Battista,* supra, 31 Conn. App. 504. Thus, the statute does not provide guidance for a person of ordinary intelligence to know what is prohibited. See id. Further, the statute provides no guidance to enforcement agencies as to its breadth. Specifically, the statute does not instruct whether to determine the dangerousness of the species or of the behavior of the specific animal to enforce the prohibition. Therefore, the statute is unconstitutionally vague as applied to the jungle cat and the bengal cat. Contra *Pinto* v. *Dept. of Environmental Protection,* supra.

The judgment of conviction pertaining to the jungle cat and the bengal cat is reversed and the case is remanded with direction to render judgment of not guilty as to each of those counts. The judgment of conviction relating to the hybrid bobcat is affirmed.

In this opinion the other judges concurred.