## STATE OF CONNECTICUT *v.* SUSAN DEFRANCESCO
## (14971)

Callahan, Borden, Norcott, Katz and Palmer, Js.

Argued September 20—decision released November 21, 1995

*Jack W. Fischer,* assistant state's attorney, with whom, on the brief, were *Mary M. Galvin,* state's attorney, and *Gerard Esposito,* assistant state's attorney, for the appellant-appellee (state).

*Michael J. Graham,* for the appellee-appellant (defendant).

*Gurrie A. Fandozzi, Jr.,* filed a brief for the International Bengal Cat Society as amicus curiae.

KATZ, J. The dispositive issues in this appeal and cross appeal are: (1) whether the list of prohibited felidae in General Statutes § 26-40a[1] is exclusive; and (2) whether § 26-40a is unconstitutionally vague as applied to the facts of this case. We conclude that the list of felidae is not exclusive and that the statute is not unconstitutionally vague.

---

[1] General Statutes § 26-40a provides: "Possession of potentially dangerous animals. *For the purposes of this section, the following shall be considered as potentially dangerous animals: The felidae, including the lion, leopard, cheetah, jaguar, ocelot, jaguarundi cat, puma, lynx and bobcat;* the canidae, including the wolf and coyote; and the ursidae, including the black bear, grizzly bear and brown bear. No person shall possess a potentially dangerous animal. Any such animal illegally possessed may be ordered seized and may be disposed of as determined by the commissioner of environmental protection. Any person who violates any provision of this section shall be fined not more than one hundred dollars for each offense. The provisions of this section shall not apply to municipal parks, zoos and nature centers, or museums, laboratories and research facilities maintained by scientific or educational institutions or to persons possessing animals legally on or before May 23, 1983." (Emphasis added.)

The facts and procedural history relevant to this appeal are set forth as follows. "On January 27, 1992, Jan Puzas, an employee of the United States Department of Agriculture, regulatory enforcement animal care division (USDA), went to 15 Bryson Avenue in Seymour to perform a prelicensing inspection in response to the defendant's application for an exhibitor's license for one rabbit. Puzas observed that the defendant kept one jungle cat, one bengal cat and one bobcat surrounded by a stockade fence at the back of her yard. Puzas played with the animals and took pictures of them. She later gave the pictures to Sergeant Rick Lewis and Detective Jim Williams, officers of the Connecticut department of environmental protection (DEP). On March 10, 1992, the defendant received a class three license for the rabbit from the USDA under the Animal Welfare Act. 7 U.S.C. § 2133 (1993); 9 C.F.R. §§ 2.1 through 2.11 (1993). The defendant has never been found to be exempt from General Statutes § 26-40a by the DEP.

"On February 16, 1992, the DEP, under the authority of a warrant secured after the defendant attempted to sell the three cats, removed the animals from the defendant's premises and placed them in the care of Elaine Burk, an expert in the field of felidae[2] and the head of Future Promise, a facility where rescued wild animals are cared for. The DEP also issued a misdemeanor complaint to the defendant charging her with a violation of General Statutes § 26-40a. Burk testified that these animals have a genetic propensity to be potentially dangerous. Burk further testified that bobcats weigh from twenty to forty-five pounds and hunt deer in Massachusetts during the winter;[3] jungle cats

---

[2] "Burk testified that felidae is the family of the felines that includes all members of the cat family." State v. DeFrancesco, 34 Conn. App. 741, 744 n.2, 643 A.2d 271 (1994).

[3] "Burk testified that, in her opinion, this bobcat is a full-blooded bobcat. The defendant contends that the bobcat is a hybrid, a cross between a

weigh from fifteen to thirty pounds and a bengal cat is a cross between an Asian leopard cat and a domestic cat. Burk also testified as to the behavior of each of these animals while in her care. The bobcat bit both her and her husband and used her hind claws to cause lacerations. The jungle cat uses her claws routinely and caused a two and one-half inch bruise on Burk's thigh. The bengal fought with the bobcat and, when Burk tried to separate the animals, the bengal attacked Burk, causing a laceration completely around her wrist and perforating her forearm four times.[4]

"The trial court found that the defendant possessed potentially dangerous animals in violation of General Statutes § 26-40a. Specifically, the trial court found that the state proved beyond a reasonable doubt that (1) the defendant possessed a bobcat, a jungle cat and a bengal cat, (2) the defendant did not qualify for an exemption from General Statutes § 26-40a, (3) the list in General Statutes § 26-40a is nonexclusive and serves only as an example of dangerous felidae, (4) the bobcat, whether hybrid or not, is specifically included on the list, (5) the jungle cat and the bengal cat are included on the list as they are of a type similar to those set forth in the list, (6) General Statutes § 26-40a is not void for vagueness, and (7) the license for the rabbit given under the Animal Welfare Act to the defendant by the USDA does not preempt General Statutes § 26-40a. Thus, the trial court found the defendant guilty on all three counts and fined her $25.00 on each count." *State* v. *DeFrancesco*, 34 Conn. App. 741, 743–45, 643 A.2d 271 (1994).

An appeal to the Appellate Court followed. The defendant presented two issues. First, she claimed that

bobcat and a domestic cat." *State* v. *DeFrancesco*, 34 Conn. App. 741, 744 n.3, 643 A.2d 271 (1994).

[4] "The defendant introduced evidence rebutting the state's evidence of the potentially dangerous tendencies of the animals." *State* v. *DeFrancesco*, 34 Conn. App. 741, 744 n.4, 643 A.2d 271 (1994).

she is exempt from the prohibitions of § 26-40a either because: (1) she was operating a zoo; or (2) she possessed other potentially dangerous animals prior to May 23, 1983.[5] Id., 745. The Appellate Court rejected this claim. Both the defendant's proffered definition of zoo[6] and that found in Webster's Third New International Dictionary[7] contain the element of keeping animals for public display. Because the defendant failed to present evidence at trial that she had kept these animals for public exhibition, the Appellate Court held that the trial court's conclusion that the defendant was not exempt from the prohibitions of § 26-40a for operating a zoo was not clearly erroneous.[8] Id., 745–46. Similarly, the Appellate Court held that because the trial court had not credited the defendant's testimony that she legally possessed other potentially dangerous animals prior to May 23, 1983, the defendant had failed to prove that she was exempt from prosecution. Id., 746.

Second, the defendant claimed that the trial court had improperly convicted her "because the animals [that she possessed] are not specifically listed in the statute or, in the alternative, the statute is unconstitutionally vague as applied in this case." Id., 747. The Appellate Court first discussed the defendant's bobcat.

[5] See footnote 1.

[6] The defendant argued that "the definition of 'zoo' should be 'any park, building, cage, enclosure, or other structure or premise in which a live animal or animals are kept for public exhibition or viewing, regardless of compensation.' See 9 C.F.R. § 1.1 (1993)." State v. DeFrancesco, supra, 34 Conn. App. 745.

[7] "The dictionary definition of 'zoo' is a 'collection of living animals usually for display.' Webster's Third New International Dictionary." State v. DeFrancesco, supra, 34 Conn. App. 745.

[8] As we have stated many times, a reviewing court examines the findings of fact made by a trial court solely to determine whether the trial court's determination was clearly erroneous. State v. Zarick, 227 Conn. 207, 228, 630 A.2d 565, cert. denied, 510 U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993); State v. Pierog, 33 Conn. App. 107, 114–15, 634 A.2d 301 (1993), cert. denied, 228 Conn. 920, 636 A.2d 851 (1994).

The defendant claimed that, although purebred bobcats are clearly prohibited by the statute, her bobcat is not included within the prohibitions of the statute because it is a hybrid bobcat. Id. The Appellate Court noted that the trial court had not decided whether the defendant's bobcat is a hybrid or a purebred. The Appellate Court stated, however, that because it is obvious that a purebred bobcat is prohibited by the statute, it would assume for the sake of the defendant's argument that her bobcat is a hybrid. Id., 747 n.6. Having first concluded that it is unclear whether the statute applies to a hybrid bobcat, the court looked to DEP regulations to aid it in determining whether a hybrid bobcat falls within the purview of the statute.[9] Id., 747–48. The court noted that the DEP, in its "regulations created for the enforcement of General Statutes § 26-55,[10] has deter-

---

[9] "When we interpret statutes . . . we accord great deference to the construction given to a statute by the agency charged with its enforcement. *Crochiere* v. *Board of Education,* 227 Conn. 333, 354, 630 A.2d 1027 (1993); *Police Dept.* v. *State Board of Labor Relations,* 225 Conn. 297, 300, 602 A.2d 1005 (1993); *Borent* v. *State,* 33 Conn. App. 495, 499, 636 A.2d 392 (1994)." *State* v. *DeFrancesco,* supra, 34 Conn. App. 748.

[10] General Statutes § 26-55 provides: "Permit for importing, possessing or liberating fish, wild birds, wild quadrupeds, reptiles and amphibians. No person shall import or introduce into the state, or possess or liberate therein, any live fish, wild bird, wild quadruped, reptile or amphibian unless such person has obtained a permit therefor from the commissioner. Such permit may be issued at the discretion of the commissioner under such regulations as he may prescribe. The commissioner may by regulation prescribe the numbers of live fish, wild birds, wild quadrupeds, reptiles and amphibians of certain species which may be imported, possessed, introduced into the state or liberated therein. The commissioner may by regulation exempt certain species or groups of live fish from the permit requirements. He may by regulation determine which species of wild birds, wild quadrupeds, reptiles and amphibians must meet permit requirements. He may totally prohibit the importation, possession, introduction into the state or liberation therein of certain species which he has determined may be a potential threat to humans, agricultural crops or established species of plants, fish, birds, quadrupeds, reptiles or amphibians. The commissioner may by regulation exempt from permit requirements organizations or institutions such as zoos, research laboratories, colleges or universities, public nonprofit aquaria or nature centers where live fish, wild birds, wild quadrupeds, reptiles and

mined that an animal that results from the crossbreeding of any species listed in General Statutes § 26-40a shall be considered the wild animal of that species. Thus, the DEP considers the crossbreed of a bobcat and a domestic cat to be a bobcat. Regs., Conn. State Agencies § 26-55-2.[11] We see no reason to depart from that interpretation by the DEP. Thus, we conclude that the possession of a hybrid bobcat is prohibited by the statute." Id., 748.

The Appellate Court further concluded that § 26-40a is not unconstitutionally vague as applied to this hybrid bobcat. The Appellate Court reasoned that "[b]ecause the statute specifically prohibits bobcats, a person of ordinary intelligence has a reasonable opportunity to know that the possession of a hybrid bobcat is prohibited." Id., 749. Furthermore, the statute provides a stan-

---

amphibians are held in strict confinement. Any such fish, bird, quadruped, reptile or amphibian illegally imported into the state or illegally possessed therein shall be seized by any representative of the department of environmental protection and shall be disposed of as determined by the commissioner. Any person, except as provided in section 26-55a, who violates any provision of this section or any regulation issued by the commissioner as herein provided shall be guilty of an infraction. Importation, liberation or possession of each fish, wild bird, wild quadruped, reptile or amphibian in violation of this section or such regulation shall be a separate and distinct offense and, in the case of a continuing violation each day of continuance thereof shall be deemed to be a separate and distinct offense."

[11] Section 26-55-2 of the Regulations of Connecticut State Agencies provides in relevant part: "Importation of birds and quadrupeds.

"(a) No person shall import or introduce into the state or possess or liberate therein without a permit, any live wild birds or any of the following wild quadrupeds: those on the threatened or endangered species list; and those in the family Castoridae, beavers; in the family Canidae, foxes; in the family Mustelidae, fisher, otter, mink, martens; in the family Cervidae, sika and white tailed deer; in the family Capromydae, nutria; or any wild hare or rabbit in the family Leporidae except as provided in Section 26-56 of the General Statutes as amended. *For the purposes of this Section, a bird or quadruped which results from the crossbreeding of any animal with one of the species listed above in this subsection or in Section 26-40a of the General Statutes as amended shall be considered to be a wild bird or quadruped of that species,* and the egg of any wild bird shall be considered a wild bird of that species." (Emphasis added.)

dard for law enforcement. "Because the statute states that bobcats are, as a matter of law, potentially dangerous, law enforcement officers know that they must determine that the animal is a bobcat before a possessor of an animal can be determined to have violated the statute." Id., 749–50. Therefore, because the statute includes hybrid bobcats and is not unconstitutionally vague as applied to hybrid bobcats, the Appellate Court affirmed the trial court's judgment of conviction with respect to the bobcat.

In contrast, the Appellate Court concluded that neither the plain language nor the legislative history of § 26-40a clearly indicates that the legislature intended that the statute apply to jungle cats and bengal cats. The court reasoned that because the term "include" can be used as either a word of enlargement or a word of limitation, the plain language of the statute is unclear. In addition, the court stated that the "legislative history fails . . . to provide guidance as to whether the statutory prohibition applies to the listed felidae only, to the listed felidae and all other potentially dangerous felidae species, or to the listed felidae and all other potentially dangerous felidae regardless of species." Id., 750. The court held, therefore, that because the statute fails to inform a person of ordinary intelligence whether the prohibition applies to an animal's species or to a particular animal's behavior, possessors of jungle cats and bengal cats are not warned that their possession of these cats violates the statute. Moreover, the statute does not provide guidance to law enforcement officials. Id., 750–51. Thus, the court held that § 26-40a is unconstitutionally vague as applied to the jungle cat and the bengal cat and reversed the convictions pertaining to those two cats. Id., 751.

We granted the state's petition for certification to decide whether the Appellate Court had improperly determined that § 26-40a is unconstitutionally vague as

applied to the jungle cat and the bengal cat.[12] Additionally, we granted the defendant's petition for certification to address her claim that the Appellate Court had improperly concluded that § 26-40a is not unconstitutionally vague as applied to the hybrid bobcat.[13] Because we conclude that the list of felidae prohibited by the statute is not exclusive and that the statute is not unconstitutionally vague as applied to all three cats, we affirm the judgment of the Appellate Court with respect to the bobcat and reverse the judgment of the Appellate Court with respect to the jungle cat and the bengal cat.

I

In order to decide whether § 26-40a is unconstitutionally vague as applied to the facts of this case, we must first consider whether the list of felidae in § 26-40a is exclusive. In other words, we must determine whether the legislature intended for the felidae listed in the statute to be the sole felidae the possession of which is prohibited or whether the legislature intended the list to serve merely as an example of the types of felidae that are considered potentially dangerous such that the possession of other species of felidae with characteristics similar to those named in the statute is also prohibited.[14] To do this, we must construe the word "including"

[12] We granted certification on July 21, 1994, limited to the following issue: "Did the Appellate Court properly reverse the defendant's convictions for possession of a jungle cat and a bengal cat on the ground that General Statutes § 26-40a was unconstitutionally vague as applied to the facts of this case?" *State* v. *DeFrancesco*, 230 Conn. 916, 645 A.2d 1019 (1994).

[13] We granted certification on December 12, 1994, limited to the following issue: "Did the Appellate Court properly affirm the defendant's conviction for possession of a hybrid bobcat on the ground that General Statutes § 26-40a was not unconstitutionally vague as applied to the facts of this case?" *State* v. *DeFrancesco*, 231 Conn. 939, 653 A.2d 823 (1994).

[14] We note that the Appellate Court recognized a third plausible interpretation of this statute, namely, that the statute prohibits possession of those felidae that are listed and also prohibits possession of those individual felidae that are determined by a trial court to be potentially dangerous. Because, however, both parties agree that the statute is species-based and not individual cat-based, we need not address this issue.

in the portion of § 26-40a that provides "[f]or the purposes of this section, the following shall be considered as potentially dangerous animals: [t]he felidae, *including* the lion, leopard, cheetah, jaguar, ocelot, jaguarundi cat, puma, lynx and bobcat . . . ."[15] (Emphasis added.) The defendant argues that the term "including" is a term of limitation and that the list of felidae is an exclusive list of the particular cats that are prohibited by this statute. The state, in contrast, argues that the term "including" is a term of expansion and that the list serves as an example of the type of felidae the possession of which is prohibited. We agree with the state.

"The purpose of statutory construction is to give effect to the intended purpose of the legislature. *Dos Santos* v. *F.D. Rich Construction Co.*, 233 Conn. 14, 20, 658 A.2d 83 (1995); *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 390, 618 A.2d 1340 (1993); *Rose* v. *Freedom of Information Commission*, [221 Conn. 217, 225, 602 A.2d 1019 (1992)]. If the language of a statute is plain and unambiguous, we need look no further than the words actually used because we assume that the language expresses the legislature's intent. *Dos Santos* v. *F.D. Rich Construction Co.*, supra, 20; *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987)." *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 234 Conn. 624, 642, 662 A.2d 1251 (1995). This court has determined, however, that the word "including" is ambiguous. "[T]here is some ambiguity concerning whether the word 'including' . . . was intended as a word of limitation . . . or one of enlargement . . . . We have recognized in the past that the words 'include' and 'including' can be considered as words of limitation as well as enlargement. *Hartford Electric Light Co.* v. *Sullivan*, 161 Conn. 145, 150, 285 A.2d 352 (1971)."

[15] See footnote 1.

*Maciejewski* v. *West Hartford,* 194 Conn. 139, 147, 480 A.2d 519 (1984); accord *State* v. *White,* 204 Conn. 410, 422–23, 528 A.2d 811 (1987). More recently, however, in a case in which we were asked to decide whether the term "including" in General Statutes (Rev. to 1989) § 17-206b[16] was a term of limitation or expansion, we concluded that "[t]he legislature's use of the word 'including' rather than the commonly utilized expression, 'shall include,' evinces an intention to provide an expansive interpretation of the [statute]." *Mahoney* v. *Lensink,* 213 Conn. 548, 569, 569 A.2d 518 (1990). Although *Mahoney* clarified somewhat the prior ambiguity clouding the word "including," it did not conclusively resolve the ambiguity because it interpreted "including" with reference to a particular statute and its purpose.

Where the plain language of a statute is ambiguous, "we must ascertain the intent of the legislature by examining the language of the statute, its legislative history and the purpose the statute is to serve." *State* v. *White,* supra, 204 Conn. 422. Various principles of statutory construction assist us in examining the language of the statute. "[P]rinciples of statutory construction . . . require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. *Turner* v. *Turner,* 219 Conn. 703, 712, 595 A.2d 297 (1991). We must avoid a construction that fails to attain a rational and sensible result that bears directly on the

---

[16] General Statutes (Rev. to 1989) § 17-206b provides: "No patient hospitalized or treated in any public or private facility for the treatment of the mentally disordered shall be deprived of any personal, property or civil rights, including the right to vote, hold or convey property, and contract, except in accordance with due process of law, and unless he has been declared incompetent pursuant to chapter 779. Any finding of incompetency shall specifically state which civil or personal rights the patient is incompetent to exercise." Section 17-206b has been transferred to General Statutes § 17a-541.

result that the legislature sought to achieve. *Peck* v. *Jacquemin*, 196 Conn. 53, 63–64, 491 A.2d 1043 (1985). [*Turner* v. *Turner*, supra,] 713. *Scrapchansky* v. *Plainfield*, 226 Conn. 446, 453, 627 A.2d 1329 (1993); see also *State* v. *Johnson*, [227 Conn. 534, 542, 630 A.2d 1059 (1993)]; *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, 220 Conn. 643, 650–51, 600 A.2d 1 (1991). . . . *Concept Associates, Ltd.* v. *Board of Tax Review*, 229 Conn. 618, 624, 642 A.2d 1186 (1994). It is also a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) *State* v. *Spears*, 234 Conn. 78, 92, 662 A.2d 80 (1995); accord *State* v. *Uretek, Inc.*, 207 Conn. 706, 719, 543 A.2d 709 (1988).

The state argues that the interpretation of § 26-40a proposed by the defendant would lead to absurd results. It points out that if the list of felidae were exclusive, the possession of many animals that we all would agree are potentially dangerous would not be prohibited. For example, if we were to read the list as exclusive, the possession of a tiger would not be prohibited because a tiger is not included in the list. We agree that this is an absurd and bizarre result. It would be nonsensical to envision the legislature prohibiting possession of animals such as lions and leopards, but permitting possession of animals such as tigers and panthers that are equally potentially dangerous.

Furthermore, it is a basic tenet of statutory construction that "no part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous." (Citation omitted; internal quotation marks omitted.) *State* v. *Anderson*, 227 Conn. 518, 528, 631 A.2d 1149 (1993); accord *Office of Consumer Coun-*

*sel* v. *Dept. of Public Utility Control*, supra, 234 Conn. 646; *LoPresto* v. *State Employees Retirement Commission*, 234 Conn. 424, 448, 662 A.2d 738 (1995); *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 100–101, 653 A.2d 782 (1995); *First Bethel Associates* v. *Bethel*, 231 Conn. 731, 741, 651 A.2d 1279 (1995); *Peck* v. *Jacquemin*, supra, 196 Conn. 66. The interpretation contemplated by the defendant would render the word "felidae" superfluous. Had the legislature intended the list to be exclusive, there would have been no need to use this word. By using the term "felidae," however, and following it with a list of certain types of felidae that share similar characteristics, the legislature apparently intended to prohibit all felidae that are similar to those listed.

Additionally, our conclusion is supported by the doctrine of ejusdem generis. According to this doctrine, "unless a contrary intent appears, where general terms are followed by specific terms in a statute, the general terms will be construed to embrace things of the same general kind or character as those specifically enumerated." *Scrapchansky* v. *Plainfield*, supra, 226 Conn. 455. The general term in § 26-40a is "felidae," while the specific terms are "lion, leopard, cheetah, jaguar, ocelot, jaguarundi cat, puma, lynx and bobcat." Therefore, according to this doctrine, prohibited "felidae" include cats that are of the same general kind or character as lions, leopards, cheetahs, jaguars, ocelots, jaguarundi cats, pumas, lynx and bobcats.

The legislative history of § 26-40a supports our conclusion that the list of prohibited felidae is not exclusive. That history clearly indicates that this statute was enacted to address concerns about the danger being posed to the general public as a result of the growing number of Connecticut residents possessing wild animals. 12 S. Proc., Pt. 3, 1967 Sess., p. 1512; 12 H.R. Proc., Pt. 6, 1967 Sess., p. 2553. Because the purpose

of the statute is to protect the public against the unau-
thorized and uncontrolled keeping of wild animals, it
is illogical to prohibit only those felidae specifically
listed in the statute when there are other animals that
are equally potentially dangerous. Furthermore, there
is nothing in the legislative history to suggest that the
legislature intended to limit the prohibited animals to
those that are listed. Rather, there is an indication that
lends support to our conclusion that the list of animals
is not exclusive. For example, when the bill was first
recommended, Senator James Tansley stated that "[i]n
recent years, it has come to the attention of the Board
of Fish and Game that people in Connecticut have, let's
say, been trying to domesticate dangerous wild animals,
and there are presently no controls over them. So this
bill would, for such animals as lions, leopards, [chee-
tahs], jaguars, bears, wolves, *and so forth*, require a
*permit from the local community.*" (Emphasis added.)
12 S. Proc., supra, p. 1512. Subsequently, during Senate
proceedings to discuss an amendment to the statute
that would place enforcement authority in the DEP
instead of the local town or city, Senator George
Gunther stated that "[m]ost of the chief executives in
the town know very little about the different species
of animals and incidentally, it's quite succinct in the type
of animal such as lions, leopards, [cheetahs], [jaguars],
[ocelots], puma, [lynx], bobcat . . . *and that sort of
thing* . . . ." (Emphasis added.) 26 S. Proc., Pt. 5, 1983
Sess., p. 1512. This legislative history indicates that the
legislators did not intend to limit the scope of this stat-
ute to those animals that are listed, but rather intended
to prohibit those animals that are similar to the "sort
of thing" that is listed in the statute.

Finally, we are instructed by *Pinto* v. *Dept. of Envi-
ronmental Protection*, United States District Court, Dis-
trict of Connecticut, Docket No. B-87-523 (March 24,
1988), in which the District Court, in deciding whether

a Siberian tiger is prohibited by § 26-40a, held that "the plain meaning, if not definition, of the term 'including' is that what follows the term is meant to be representative; the list of animals which follow 'including' in Section 26-40 (a) are simply examples of potentially dangerous felidae. Were this not the case and the animals listed were the only animals to which the statute applied, then there would have been no reason for the legislature to include the phrase 'the felidae.' In other words [the] plaintiffs' interpretation results not only in an unorthodox understanding of the term 'including,' but also in redundant statutory wording. The better interpretation—one which comports with the plain meaning of the text—is that the list of animals is a nonexclusive list meant to serve as an example of 'potentially dangerous' felidae. . . . Indeed, an interpretation that tigers were *not* subject to the statutory prohibition would 'pervert' the State's clear purpose of protecting the welfare of its citizens." (Citations omitted; emphasis in original.)

Having concluded that § 26-40a is not exclusive, we must next decide whether bobcats, bengal cats, and jungle cats are prohibited by the statute. We conclude that their possession is prohibited. Although the trial court never made a definitive finding as to whether the defendant's bobcat is a purebred or a hybrid, because a purebred is clearly prohibited by the statute, we will analyze the question, as did the Appellate Court, as if the defendant's bobcat were a hybrid. We agree with the Appellate Court that possession of a hybrid bobcat is prohibited. Section 26-55-2 of the Regulations of Connecticut State Agencies[17] provides that a "quadruped

---

[17] See footnote 11. Although this regulation specifically applies to General Statutes § 26-55, that section and § 26-40a are part of a common regulatory scheme to control the possession of wild animals. Section 26-55 applies generally in that it requires a permit in order to possess a wild quadruped. See footnote 10. Section 26-40a limits this general provision by prohibiting the possession of a subcategory of wild animals, namely potentially danger-

which results from the crossbreeding of any animal with one of the species listed . . . in Section 26-40a . . . shall be considered to be a wild . . . quadruped of that species . . . ."[18] In other words, this regulation dictates that the cross of a bobcat and a domestic cat is to be considered a wild bobcat. Therefore, because a hybrid bobcat is classified as a wild bobcat, it is included in and prohibited by the plain language of § 26-40a.

Furthermore, jungle cats and bengal cats[19] are prohibited because they are considered potentially dangerous and they share similar characteristics to those animals listed in the statute. Both the state's expert witness and the defendant testified at trial that these animals are like those listed in the statute in that they have dangerous propensities.[20] The trial court stated in its oral memo-

ous animals. We note that § 26-55-2 (o) of the Regulations of Connecticut State Agencies provides: "No potentially dangerous animal as defined in Section 26-40 of the Connecticut General Statutes as amended shall be imported or introduced into this state by any person. This subsection shall not apply to municipal parks, zoos and nature centers, or museums, laboratories and research facilities maintained by scientific or educational institutions."

[18] At oral argument in this court, the defendant claimed that the regulation is irrational. Because she failed to brief this issue, however, we do not consider it. *State* v. *Cavallo*, 200 Conn. 664, 666 n.3, 513 A.2d 646 (1986); *Bieluch* v. *Bieluch*, 199 Conn. 550, 555 n.5, 509 A.2d 8 (1986); *State* v. *Wright*, 197 Conn. 588, 595, 500 A.2d 547 (1985).

[19] The state and the defendant agreed at trial that a bengal cat is inherently a hybrid of a leopard cat and a domestic cat, although the trial court did not explicitly find that fact. Furthermore, we note that leopard cat is synonymous with ocelot; Webster's Third New International Dictionary; which is specifically named in the statute. Assuming that the bengal cat is a hybrid, therefore, we apply the same reasoning as with bobcats and conclude that possession of a bengal cat is prohibited by § 26-40a because it is essentially a cross between an ocelot and a domestic cat.

[20] The state's expert witness, Elaine Burk, testified as to the potentially dangerous nature of the bobcat, jungle cat and bengal cat. She testified that "[a] Bobcat is an animal that ranges on the average, from 20 up to as large as 45 pounds. It's an animal that's been documented in Massachusetts during winter time to take down deer. I have worked with Bobcats for a number of years. I have not come away without a few scars of my own. Concerning

randum of decision that "[i]t would appear from the testimony that I heard, and that I credit, that the general behavior of the three cats were quite similar. [Burk] described them all as potentially dangerous. [Burk's] personal description is not so important to me, as to her conclusion that they are all about the same size, that they are wild as opposed to domestic, and they all have similar characteristics, and the conduct of each one of them is similar in her caring of them. So, based on all of that the Court concludes that the three animals, the Bobcat because it is specifically mentioned, the Bengal and the Jungle cat because they are of a similar type, disposition, and species, that they are also intended to be included within the general definition of potentially dangerous animals." Therefore, because bengal and jungle cats are potentially dangerous felidae that are similar in nature and character to the named cats, we conclude that they fall within § 26-40a.

## II

The next issue that we must decide is whether § 26-40a is unconstitutionally vague as applied to the facts of this case. "[I]n evaluating [a] defendant's challenge to the constitutionality of [a] statute, we read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it. 'We will indulge in every presumption in favor of the statute's constitutionality . . . .' *State* v. *Floyd*, 217 Conn. 73, 79, 584 A.2d 1157 (1991); *State* v. *Breton*, 212 Conn. 258, 269, 562 A.2d 1060 (1989)[on appeal after remand, 235 Conn.

Jungle cats, I've worked with a Jungle cat before, I've worked at Tufts University with a Jungle cat, and by the nature of it being a wild animal, it does indeed have the potential of being dangerous. A Jungle cat on the average ranges between 15 and 30 pounds. A Bengal is a hybrid. It's a cross between a Leopard cat, an Asian Leopard cat, Felis Bengalunsis (phonetic spelling) and a domestic cat. I in fact owned a 1st and 2nd generation, or I have owned a 1st and 2nd generation Bengals. I would not allow anyone else to pet them, let alone be around children because I considered them to be too dangerous."

206, 663 A.2d 1026 (1995)]; *McConnell* v. *Beverly Enterprises-Connecticut, Inc.*, 209 Conn. 692, 705, 553 A.2d 596 (1989)." *State* v. *Indrisano*, 228 Conn. 795, 805, 640 A.2d 986 (1994).

The vagueness doctrine essentially requires that statutes provide fair warning or notice of the conduct that is prohibited and establish minimum guidelines to govern law enforcement. *State* v. *Indrisano*, supra, 228 Conn. 802. "Under the requirements of due process of law mandated by our federal and state constitutions, a penal statute must be sufficiently definite to enable a person to know what conduct he must avoid. *State* v. *Proto*, 203 Conn. 682, 696, 526 A.2d 1297 (1987); *State* v. *Pickering*, 180 Conn. 54, 59–60, 428 A.2d 322 (1980); see *Buckley* v. *Valeo*, 424 U.S. 1, 77, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976); *State* v. *Eason*, 192 Conn. 37, 46, 470 A.2d 688 (1984) [overruled in part on other grounds, *Paulsen* v. *Manson*, 203 Conn. 484, 525 A.2d 1315 (1987)]. [A] statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. *Connally* v. *General Construction Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926); *State* v. *Eason*, supra [46]; *State* v. *Pickering*, supra, 60. *State* v. *Linares*, 232 Conn. 345, 354, 655 A.2d 737 (1995); *State* v. *Williams*, 205 Conn. 456, 469–70, 534 A.2d 230 (1987)." (Internal quotation marks omitted.) *Benjamin* v. *Bailey*, 234 Conn. 455, 483, 662 A.2d 1226 (1995). The proscription of the activity, however, need not be definite as to all aspects of its scope. A statute is not unconstitutional merely because a person must inquire further as to the precise reach of its prohibitions. *State* v. *White*, supra, 204 Conn. 415 ("It is not necessary . . . that a statute list the precise conduct prohibited or required. . . . It is recognized that the law may be general in nature; the constitution requires no more

than a reasonableness of certainty." [Citation omitted.]); *State* v. *Eason*, supra, 47. Furthermore, the statute at issue need only give fair warning to those who are potentially subject to it. *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 501 n.18, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

In addition, " 'if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.' *Grayned* v. *Rockford,* [408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)]. Therefore, 'a legislature [must] establish minimal guidelines to govern law enforcement.' . . . *Kolender* v. *Lawson*, 461 U.S. 352, 357–58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); see also *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 591, 590 A.2d 447 (1991)." *State* v. *Indrisano,* supra, 228 Conn. 803.

In determining whether a statute is unconstitutionally vague, "we take into account any prior interpretations that this court, our Appellate Court and the Appellate Session of the Superior Court have placed on the statute." *State* v. *Indrisano,* supra, 228 Conn. 805. In addition, we can use as a guide judicial opinions that, while not binding on this court, refer to the statute in question or to a statute that uses similar language. *State* v. *Proto,* supra, 203 Conn. 699–700. Furthermore, we can refer to the common law, legal dictionaries, treatises and the commonly accepted meanings of the terms in other statutes. Id., 699; *State* v. *Pickering,* supra, 180 Conn. 62–63.

The standard that we apply in determining whether a statute is unconstitutionally vague is influenced by

the nature of the right being affected and whether the statute is criminal or civil in nature.[21] Statutes that inhibit constitutionally protected rights and criminal statutes are subject to a more stringent vagueness test. *State* v. *Linares*, supra, 232 Conn. 355; *State* v. *Indrisano*, supra, 228 Conn. 803–804. On the other hand, civil statutes receive a less stringent vagueness test. *State* v. *Linares*, supra, 355; *State* v. *Indrisano*, supra, 803–804.

In this case, the defendant challenges the constitutionality of § 26-40a as it applies to the particular facts of this case.[22] She argues that, because the totality of facts of this case did not sufficiently notify or warn her that the possession of a hybrid bobcat, a jungle cat or a bengal cat is prohibited, § 26-40a is void for vagueness. With all the aforementioned criteria in mind, we must determine whether the defendant had sufficient notice and warning that her possession of the cats was prohibited under § 26-40a.

---

[21] The parties agree that § 26-40a does not interfere with constitutionally protected rights. See *Nicchia* v. *New York*, 254 U.S. 228, 230–31, 41 S. Ct. 103, 65 L. Ed. 235 (1920); *Sentell* v. *New Orleans & Carrollton R. Co.*, 166 U.S. 698, 701, 704, 17 S. Ct. 693, 41 L. Ed. 1169 (1897) (no constitutional right to own cat or dog). In addition, § 26-40a is clearly a criminal statute.

[22] In addition, the constitutionality of a statute can be challenged for facial vagueness. In such a situation, the challenger must prove that the statute is vague in all of its possible applications. "A statute that is impermissibly vague in all its applications is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. . . . Such a provision simply has *no* core. (Citations omitted; emphasis in original.) *Smith* v. *Goguen*, 415 U.S. 566, 578, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); see also *Parker* v. *Levy*, 417 U.S. 733, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974); *State* v. *Ball*, 226 Conn. 265, 271, 627 A.2d 892 (1993); *State* v. *Pickering*, [supra, 180 Conn. 65]. Professor Laurence Tribe calls such a statute 'perfectly vague.' L. Tribe, [American Constitutional Law (2d Ed. 1988)] § 12-32, p. 1036. *State* v. *Indrisano*, [supra, 228 Conn. 804]." (Internal quotation marks omitted.) *Benjamin* v. *Bailey*, supra, 234 Conn. 484. Any hypothetical application that is not vague would save the statute. Because neither party has challenged the constitutionality of this statute on its face, we need only examine whether § 26-40a is vague as applied to the facts of this case. *State* v. *Cavallo*, 200 Conn. 664, 666 n.3, 513 A.2d 646 (1986);

The defendant testified at trial that she has specialized knowledge of felidae, including their behavioral characteristics and ancestry. She testified that she has owned various cats, including other jungle cats, for over ten years, that she has contact with breeders, that she buys and sells cats, that she reads books and magazines on exotic cats and belongs to a cat club, that she lectures about exotic cats, and that she trained a veterinarian to handle exotic cats properly. Furthermore, she testified that she even telephoned the DEP to inquire whether she could keep her three cats.

Mindful of this defendant's heightened knowledge of exotic cats and our conclusion that the list of prohibited cats in § 26-40a is not exclusive,[23] we next examine whether § 26-40a warned the defendant that possession at her home of her three cats was prohibited by the statute. We conclude that she was adequately warned.

We agree with the Appellate Court that § 26-40a sufficiently warned and notified the defendant that possession of a hybrid bobcat was prohibited. Section 26-55-2 classifies a hybrid bobcat as a wild bobcat and § 26-40a clearly prohibits bobcats. In addition, the defendant has heightened knowledge of bobcats that stems from her experience with handling them, her contact with breeders and her access to literature on bobcats. The combination of these factors provided adequate warning to this defendant that possession of a hybrid bobcat

*Bieluch* v. *Bieluch,* 199 Conn. 550, 555 n.5, 509 A.2d 8 (1986); *State* v. *Wright,* 197 Conn. 588, 595, 500 A.2d 547 (1985).

[23] The defendant had sufficient notice and warning that § 26-40a is not exclusive by the combination of (a) the holding by Judge Cabranes in *Pinto* v. *Dept. of Environmental Protection,* supra, Docket No. B-87-523 (D. Conn. March 24, 1988), that § 26-40a includes other potentially dangerous animals that are not specifically listed in § 26-40a, (b) the conspicuous absence of many potentially dangerous animals from the statute, such as tigers, and (c) the defendant's specialized knowledge of the character of these animals. See *State* v. *Proto,* supra, 203 Conn. 699–700; *State* v. *Pickering,* supra, 180 Conn. 62–63.

violates this statute. Furthermore, the statute provides a standard for law enforcement because it mandates that an officer determine that an animal is a bobcat before its possessor can be accused of violating the statute. *State* v. *Linares*, supra, 232 Conn. 362 (statute provides objective standard so that law enforcement officers know what to consider). Therefore, on the facts of this case the statute is not unconstitutionally vague as applied to bobcats.[24]

We disagree with the Appellate Court that the statute is unconstitutionally vague as applied to bengal and jungle cats. Both the state's expert witness; see footnote 20; and the trial court's findings indicate that bengal and jungle cats are potentially dangerous in that they "are similar in type, disposition, and species" to those felidae listed in the nonexclusive statute. In addition, because the defendant has owned various cats in the past, including jungle cats, has worked with breeders to buy and sell cats, and reads numerous publications pertaining to these cats, she must be deemed to be aware of the characteristics of these animals. Therefore, we conclude that this defendant was adequately warned and notified that either her cats are prohibited or that, at a minimum, she should have inquired further to determine if they are prohibited. The defendant did not need to guess at the meaning of the statute. She simply had to compare the cats that she owned to those listed in

[24] Similarly, if we assume that a bengal cat is a hybrid of an ocelot and a domestic cat; see footnote 19; the defendant had sufficient notice that a bengal is prohibited because ocelot is named in § 26-40a, § 26-55-2 of the Regulations of Connecticut State Agencies classifies a hybrid as a wild animal, and § 26-40a is not exclusive. See footnote 23.

We note that the defendant, whose burden it is to prove the statute unconstitutional beyond a reasonable doubt; *Moore* v. *Ganim*, 233 Conn. 557, 571–72, 660 A.2d 742 (1995); did not introduce evidence as to what generation hybrid her bobcat or bengal cat is. Consequently, we do not decide whether an owner of, for example, a tenth generation hybrid would be sufficiently warned that possession of such an animal is potentially illegal.

the statute in order to conclude that they are of like character and are, therefore, similarly potentially dangerous.

Furthermore, the statute provides adequate guidance to law enforcement officials. Id., 362. The statute creates standards that will avoid arbitrary and discriminatory enforcement. The statute applies only to potentially dangerous felidae and provides a list of examples of such potentially dangerous felidae to which law enforcement officials can compare other felidae, such as bengal and jungle cats, to determine if a cat that is not named in the statute is similar to one that is named. Therefore, the statute is not unconstitutionally vague as applied to bengal and jungle cats.

The judgment of the Appellate Court affirming the defendant's conviction of possession of a potentially dangerous animal under § 26-40a with respect to the bobcat is affirmed; the judgment of the Appellate Court reversing the defendant's conviction of possession of a potentially dangerous animal under § 26-40a with respect to the bengal and jungle cats is reversed, and the case is remanded to that court with direction to affirm the judgment of the trial court pertaining to those two cats.

In this opinion the other justices concurred.